### The STANLEY–LAMAN GROUP, LTD., William G. Stanley, James J. Laman, Esquire, Appellants

v.

### Christian R. HYLDAHL

v.

### William G. Stanley, James J. Laman, David Eaton and Stanley–Laman Group Securities, LLC., Appellants.

Superior Court of Pennsylvania.

Argued Oct. 2, 2007.

Filed Dec. 14, 2007.

---

Scott E. Yaw, Malvern, for appellants.

Thomas H. Chiacchio, Jr., Philadelphia, for appellee.

BEFORE: DANIELS, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY JOHNSON, J.:

¶ 1 The Stanley–Laman Group, Ltd. (SLG), Stanley–Laman Group Securities, LLC (SLGS), William G. Stanley (Stanley), James J. Laman (Laman) and David Eaton (Eaton) (collectively the Appellants) appeal from the trial court order overruling their preliminary objection, which attempted to compel arbitration on three counts raised by Christian R. Hyldahl (Hyldahl) in his counterclaims. The trial court found that allowing arbitration as to these counts could lead to two different results because the underlying facts would be litigated in arbitration and also in the trial court. The trial court alternatively found that the Appellants had waived their claim to arbitration because they had accepted the judicial process before seeking arbitration. The Appellants contend that the trial court erred in finding the three counts asserted in Hyldahl's counterclaims could not proceed to arbitration as they had a valid agreement to arbitrate with Hyldahl and the relevant counts are within the scope of this agreement. The Appellants also contend that they did not waive their right to arbitrate as they raised the right to arbitrate in a timely manner and did not take advantage of the judicial process. After study, we conclude that the Appellants waived their right to arbitration because they sought and accepted relief through the judicial process. Accordingly, we affirm the trial court's order.

¶ 2 In December of 2001, SLG, a financial management business incorporated in

Pennsylvania, hired Hyldahl as a portfolio manager. As part of his employment, Hyldahl executed a non-solicitation and confidentiality agreement (the Agreement). In connection with his employment with SLG, Hyldahl also worked as a financial planner and registered representative of SLGS, which is a Delaware limited liability corporation and a member of the National Association of Securities Dealers (NASD). The NASD is a self-regulating organization (SRO) which licenses companies and persons involved in the securities industry in the United States. The NASD is sanctioned by the United States Securities and Exchange Commission ("SEC") to discipline registered representatives and member firms that fail to comply with federal securities laws and NASD's rules and regulations. SROs, such as NASD, which operate in the securities and investment fields, require firms to compel employees and contractors to register with the SRO, i.e., by completing a Form U–4, as a condition of their employment.

¶ 3 SLGS negotiated selling agreements to obtain commission arrangements with life insurance companies enabling its representatives to sell variable annuities and variable life insurance products. While SLGS would negotiate the agreements to sell, employees of SLG would secure the sale of such products. Indeed, SLG and SLGS shared office space and common management: Stanley is an owner and operating principal of SLGS and the president and owner of SLG; Laman is an owner and operating principal of SLGS and an owner and vice president, secretary, and treasurer of SLG; and Eaton is an owner of SLGS and an owner and vice president of SLG. Hyldahl acted as SLGS's chief compliance officer and oversaw its anti-money laundering program. As part of his responsibilities with SLGS, a member of the NASD, Hyldahl was required to complete Form U–4. This form stated in relevant part that any dispute, claim, or controversy between Hyldahl and his employer, customer or any other person as required by the NASD would be arbitrated. In January of 2005, Hyldahl's employment was terminated for cause and willful misconduct. Because Hyldahl was terminated, NASD required SLGS to complete and submit a Uniform Termination Notice for Securities Industry Registration (Form U–5). In this form, SLGS informed the NASD that Hyldahl was terminated because he misappropriated trade secrets.

¶ 4 On February 11, 2005, SLG filed a complaint in the trial court alleging Hyldahl breached the Agreement, attempted to sabotage relationships between SLG and its clients, and used confidential information gleaned from SLG in violation of the Pennsylvania Uniform Trade Secrets Act. On that same date, SLG filed a petition for issuance of a preliminary injunction to preclude Hyldahl from contacting SLG's clients while using confidential information for the purpose of soliciting business from these clients, in violation of the Agreement. On March 1, 2005, Hyldahl filed an answer with new matter to the original complaint. As part of the new matter, Hyldahl set forth counterclaims against SLG and the principals of SLG, Stanley, Laman, and Eaton, asserting a violation of the wage payment collection law and a breach of contract. On March 15, 2005, the Honorable Jacqueline C. Cody granted SLG's preliminary injunction and ordered Hyldahl to stop any further contact with SLG's clients. This Court affirmed the trial court's order on March 7, 2006. *See Stanley–Laman v. Hyldahl*, 898 A.2d 1142 (Pa.Super.2006) (Table).

¶ 5 In June of 2005, SLG, Stanley, and Laman filed an amended complaint. In addition to the claims raised in the original complaint, SLG, Stanley and Laman al-

leged claims of defamation and commercial disparagement relating to statements Hyldahl made to former SLG customers involving assertions of illegal trading by SLG. On August 1, 2005, Hyldahl filed an answer with new matter to the amended complaint, asserting counterclaims against SLG, Stanley, Laman and Eaton. In response to preliminary objections filed by SLG, Stanley, Laman and Eaton, Hyldahl filed amended counterclaims. In these amended counterclaims, Hyldahl added SLGS as an additional defendant. Hyldahl asserted claims against the Appellants asserting, in part, counts of defamation, tortious interference and negligence (Counts III, IV, and V respectively). These claims arise from the statements made by SLGS to NASD in the Form U–5. On October 3, 2005, the Appellants filed preliminary objections, raising in part the existence of an agreement to arbitrate the claims raised in Counts III, IV, and V based upon Form U–4 that Hyldahl had completed as part of his employment with SLGS. On October 24, 2005, Hyldahl filed second amended counterclaims again asserting claims arising out of SLGS's completion of Form U–5. On November 14, 2005, the Appellants filed preliminary objections to the second amended counterclaims again raising the existence of the arbitration clause. Hyldahl filed an answer to the preliminary objections on December 5, 2005. Laman was subsequently deposed over disputed facts raised by Hyldahl's answer to the preliminary objections to the second amended counterclaims. On January 2, 2007, Judge Cody overruled the Appellants' preliminary objections as related to the arbitration clause but dismissed Count V with prejudice.

¶ 6 The Appellants now appeal, raising the following question for our review:

DID THE TRIAL COURT ERR IN OVERRULING APPELLANTS' PRELIMINARY OBJECTIONS PURSU-ANT TO PA.R.C.P. NO. 1028(a)(6), RAISING THE EXISTENCE OF AN AGREEMENT FOR ALTERNATIVE DISPUTE RESOLUTION, AS TO COUNTS III, IV, AND V OF HYDAHL'S [sic] SECOND AMENDED COUNTERCLAIMS?

Brief for Appellants at 4.

¶ 7 The Appellants' sole argument involves the trial court's denial of their preliminary objections requiring Hyldahl's counterclaims at Counts III, IV, and V be resolved through arbitration. Brief for Appellants at 14–18. In reviewing the denial of preliminary objections by the trial court, we apply the same standard as the trial court. *See De Lage Landen Fin. Servs., Inc. v. Urban P'ship, LLC,* 903 A.2d 586, 589 (Pa.Super.2006). "Our standard of review of an order of the trial court overruling [or granting] preliminary objections is to determine whether the trial court committed an error of law." *Id.* (citation omitted).

¶ 8 Preliminarily, Hyldahl argues that the Appellants have waived their right to arbitration because they availed themselves of the judicial process. Brief for Appellee at 11. It is well-settled that "[a]s a matter of public policy, our courts favor the settlement of disputes by arbitration." *Goral v. Fox Ridge, Inc.,* 453 Pa.Super. 316, 683 A.2d 931, 933 (1996). "Nevertheless, the right to enforce an arbitration clause can be waived." *Id.* "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship,* 416 Pa.Super. 45, 610 A.2d 499, 501 (1992). A party's acceptance of the regular channels

of the judicial process can demonstrate its waiver of arbitration. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1278 (Pa.Super.2004) (stating acceptance of judicial process includes a party's failure to raise the arbitration issue promptly, a party's engagement in discovery, and a party waiting until it receives adverse rulings on pretrial motions before raising arbitration). "However, a waiver of a right to proceed to arbitration pursuant to the term of a contract providing for binding arbitration should not be lightly inferred and unless one's conduct has gained him an undue advantage or resulted in prejudice to another he should not be held to have relinquished the right." *Kwalick v. Bosacco*, 329 Pa.Super. 235, 478 A.2d 50, 52 (1984).

¶ 9 At the heart of whether the Appellants waived their right to arbitration is whether SLG could, following the filing of their initial complaint, raise the issue of arbitration found in Form U–4 signed by Hyldahl. The Appellants argue that they did not waive their right to arbitration because the claims subject to arbitration were raised by Hyldahl. Brief for Appellants at 26. The Appellants assert that they did not have a right to compel arbitration until Hyldahl made SLGS, the corporation for which Hyldahl worked under Form U–4, a party to the action in his amended counterclaims. Brief for Appellants at 27. However, Hyldahl argues that the right to arbitration attached at the time SLG filed its initial complaint and that because they took advantage of the judicial process, they are not entitled to arbitration. Brief for Appellee at 11–14.

¶ 10 Here, Hyldahl was an employee of both SLG and SLGS. The two companies share management, employees and commercial space. Indeed, SLGS does not have any full-time employees; instead, it uses SLG employees to conduct its business. Notes of Deposition (James Laman), 4/13/06, at 32. SLGS required its employees to sign registered representative agreements with the NASD because it was involved in the insurance securities industry. As part of these agreements, Hyldahl signed Form U–4 which provided in part that any disputes required by the rules of the governing SRO identified in the form would be arbitrated. Specifically, the arbitration provision reads in relevant part as follows:

I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Form U–4, 9/30/02, at 6 (unnumbered) (Reproduced Record (R.R.) at 242a). The SRO identified in Section 4 is the NASD. Therefore, according to Form U–4, Hyldahl was compelled to arbitrate any disputes or claims required by the NASD rules and regulations. The NASD rules regulate the scope of the matters which were required to be arbitrated; however, Form U–4 stipulates that the only eligible parties with which Hyldahl could arbitrate were his firm, a customer, or "any other person."

¶ 11 The NASD Code sets forth the matters (disputes or claims) that are eligible for submission for arbitration: "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member[.]" NASD Rule 10101 (effective for cases filed prior to April 16, 2007).

Further the Code limits the eligible matters to those that are **required** for submission:

(a) [A] dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

NASD Rule 10201(a) (effective for cases filed prior to April 16, 2007). Based upon this rule, a matter would be required to be arbitrated if the dispute, claim, or controversy between members, and/or associated persons and/or certain others involved employment disputes. Therefore, we must determine whether SLG and Hyldahl fall within the definition of any of these parties.

¶ 12 The NASD By–Laws of the Corporation define an associated person as:

(1) a natural person who is registered or has applied for registration under the Rules of the Corporation; (2) a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the Corporation under these By–Laws or the Rules of the Corporation[.]

NASD By–Laws Art. I(rr). Applying this definition, Hyldahl, a natural person who is registered with the NASD, would be considered an associated person. However, SLG would not fall under this definition as it is not a natural person, but an entity. The Appellants argue that SLG is a "certain other" as set forth in Rule 10201. Brief for Appellants at 20. While the NASD does not explicitly define "certain other," various courts have found a party is a "certain other" when that party "is sufficiently immersed in the underlying controversy[.]" *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 87–88 (2d Cir.1994) (finding a party is a "certain other" where (1) the party actively participates in the securities industry, (2) is a signatory to a securities industry arbitration agreement, (3) has voluntarily participated in the events giving rise to the controversy underlying the arbitration claim); *see also In re Prudential Ins. Co. of America Sales Practice Litig.*, 133 F.3d 225, 229–30 (3d Cir.1998) (stating Form U–4 arbitration provision and NASD rules should be read expansively to include parties which are not explicitly included in either); *Marciano v. MONY Life Ins. Co.*, 470 F.Supp.2d 518, 529 (E.D.Pa.2007). Further, courts have found sufficient immersion where the claims of a non-signatory party is intertwined or interrelated with the claims of a signatory party. *See Marciano*, 470 F.Supp.2d at 531; *Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F.Supp.2d 217, 225 (D.Mass.1999); *Parrott v. Pasadena Capital Corp.*, 1998 WL 91076, at *4 (S.D.N.Y.1998).

¶ 13 Here, in its complaint and amended complaint, SLG alleges Hyldahl was terminated for misappropriating confidential information constituting trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act. SLG also alleged that Hyldahl breached his fiduciary duty when he revealed confidential information of the corporation to clients and other customers. Hyldahl, in his amended counterclaims, alleged that the Appellants defamed and tortiously interfered with prospective economic relationships over their statements in the Form U–5 that he had misappropriated confidential information. The facts underlying each of the parties' claims are identical and set forth in SLG's initial complaint. Further, according to the deposition of James Laman, SLG and SLGS shared office space, employees, management, and worked in concert in selling insurance annuities. Notes of Deposition (James Laman), 4/13/06, at 16–17, 28–30, 32. Laman characterized the two entities as "brother/sister entities." *Id.* at 15. Based upon the foregoing, their actions are interrelated and SLG is sufficiently immersed in the underlying controversy as to be considered a "certain other." *See Marciano*, 470 F.Supp.2d at 533; *Basil Inv. Corp. v. Hampshire Funding, Inc.*, 1998 WL 88399, at *4 (E.D.Pa.1998) (finding a non-signatory entity was a "certain other" under the NASD where it and the signatory entity shared officers, directors, office space, and were related entities). Therefore, SLG and Hyldahl were required to arbitrate their claims under the NASD.

¶ 14 However, this conclusion does not end our discussion as under NASD Rule 10201, SLG cannot compel arbitration as a "certain other." The Rule, stated above, sets forth which categories of people and/or entities can institute arbitration. An entity classified as a "certain other" is not included as a party which can compel arbitration. *See* NASD Rule 10201(a), *supra*. *See also Burns v. New York Life Ins. Co.*, 202 F.3d 616, 622 (2d Cir.2000) (holding "certain others" are not authorized to compel arbitration under the NASD). Nevertheless, NASD Rule 10201 is not determinative of whether SLG could compel arbitration under Form U–4. The language structure of Form U–4 explicitly states that the only disputes that are required to be arbitrated are those set forth by the NASD Rules. *See* Form U–4, 9/30/02, at 6 (unnumbered) ("I agree to arbitrate any dispute, claim, or controversy ... that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD]."). Clearly the phrase "required to be arbitrated" is directly related to and modifies the agreement "to arbitrate any dispute, claim or controversy[.]" Further, "required to be arbitrated" does not modify "that may arise between me and my firm, or a customer, or any other person," because this phrase itself modifies the agreement "to arbitrate any dispute, claim or controversy[.]" Indeed, Form U–4, which is used by a variety of SROs, explicitly states that the only eligible parties with which Hyldahl could arbitrate were his firm, customer, or **any other person.** Because SLG is not Hyldahl's firm or customer, we must determine whether SLG may be classified as "any other person" as set forth in Form U–4.

¶ 15 The *Marciano* Court confronted a situation similar to the case at bar relating to Form U–4. There, plaintiff employees brought an action against MONY Life and its subsidiaries over their departures from the company. *See Marciano*, 470 F.Supp.2d at 521. The employees worked for a subsidiary of MONY Life which functioned as a brokerage firm. *See id.* However, the subsidiary and MONY Life shared corporate functions and acted in concert. *See id.* at 533. As part of their employment, the employees signed Form

U–4 acknowledging the NASD as the relevant SRO. *See id.* at 523. As a result of the complaint against it, MONY Life moved to compel arbitration under the NASD even though it was not a member of the NASD. *See id.* at 522. The district court studied Form U–4 and the NASD to determine whether MONY Life could compel arbitration even though it was a non-signatory to the NASD. *See id.* at 527. The court, looking first at the NASD to determine whether the claims against MONY Life should be arbitrated, found MONY Life was sufficiently immersed as a "certain other" in the underlying dispute as the complaint did not distinguish between the actions taken by MONY Life and its subsidiary, the employees did not distinguish between the conduct of the subsidiary and MONY Life and the two shared many functions in day-to-day business. *See id.* at 533. Next, the court found that while a "certain other" could not compel arbitration, the NASD was not controlling under Form U–4 as to which parties could compel arbitration. *See id.* at 534–36. The court found that the employees "agreed to arbitrate any dispute that may arise between me and . . . any other person, that is required to be arbitrated under the rules of the NASD." *Id.* at 535 (citing Form U–4, internal quotation marks omitted). The court analyzed the relevant terms and reached the following conclusion:

> The Court is confronted with whether the term "person" in the Form U–4 means only natural persons, as it does in the NASD Code, or includes entities, as it does in the Securities Exchange Act, 15 U.S.C. § 78c(a)(9); *see S.E.C. v. J.W. Barclay & Co.,* 442 F.3d 834, 842 (3d Cir.2006). . . . Form U–4 is used by numerous SROs, not just the NASD, and is standard in the industry. Moreover, the form is otherwise expansive. Therefore, the definition of "person" in the Securities Exchange Act is controlling for the meaning of "person" in the Form U–4. The definition of "person" includes non-natural entities.

> Form U–4 obligates signatories to arbitrate any dispute between themselves and any other person (or entity) that is required to be arbitrated under the NASD Code. Disputes between "associated persons" and "certain others" are required to be arbitrated under the Code. Therefore, a "certain other" can compel arbitration under the Form U–4.

> \* \* \* \*

> Therefore, Plaintiffs, upon executing the Form U–4, agreed to arbitrate their dispute against MONY Life. On the basis of this agreement, MONY Life can compel Plaintiffs to proceed to arbitration.

*Id.* at 535–36.

¶ 16 We find this reasoning to be persuasive to the facts in the case at bar. Form U–4 explicitly states that the indicated SRO governs what disputes are required to be arbitrated. However, the form also limits the parties that are eligible to seek arbitration under the agreement. Here, SLG is a non-natural entity which qualifies as a "person" under Form U–4. Further, under the NASD, SLG is a "certain other" and Hyldahl was required to arbitrate any claims with SLG related to his employment. Therefore, because Hyldahl agreed to arbitrate disputes related to his employment with SLG based upon the NASD rules and SLG is a party recognized as able to arbitrate disputes based upon Form U–4, SLG can compel Hyldahl to arbitrate its claims. As we have found SLG could compel arbitration, we must determine whether the Appellants have waived their right to arbitrate the claims.

¶ 17 As noted above, a party seeking to take a case to arbitration may waive this

right if it has availed itself of the judicial process. *See Goral,* 683 A.2d at 934 (finding party waived arbitration after accepting judicial process following the filing of a complaint); *Samuel J. Marranca,* 610 A.2d at 501–02 (same). The Appellants maintain that SLG could not compel arbitration when it first filed its complaint because it was not a NASD member. Brief for Appellants at 27. The Appellants claim they did not waive their right to arbitration as they timely raised the arbitration issue as soon as Hyldahl raised counterclaims against SLGS. Brief for Appellants at 27. However, as we concluded above, SLG could have compelled arbitration even though it was not a signatory to the NASD.

■ ¶ 18 This case is atypical from most arbitration cases, as generally the party seeking to take the case to arbitration is the defendant. Here, SLG filed a complaint, sought an injunction, and filed an amended complaint before Hyldahl filed his amended counterclaims which the Appellants now seek to take to arbitration. While SLG and by association the remaining Appellants are technically the defendants to the counterclaims, SLG was the plaintiff in the initial complaint. Although our Court has found that the mere filing of a complaint does not demonstrate waiver of the right to arbitration, *see Keystone Tech. Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1226 (Pa.Super.2003), a party that avails itself of the judicial process by attempting to win favorable rulings from the judicial system following the filing of a complaint does waive their right to proceed through arbitration. *See Goral,* 683 A.2d at 933–34; *Samuel J. Marranca,* 610 A.2d at 501. Among the factors to look at to determine whether a party has accepted the judicial process is if it "(1) fail[ed] to raise the issue of arbitration promptly, (2) engage[d] in discovery, (3) file[d] pretrial motions which do not raise the issue of arbitration, (4) wait[ed] for adverse rulings

on pretrial motions before asserting arbitration, or (5) wait[ed] until the case is ready for trial before asserting arbitration." *St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs.,* 733 A.2d 677, 682 n. 6 (Pa.Cmwlth.1999).

■ ¶ 19 In its initial and amended complaint, SLG alleged Hyldahl misappropriated trade secrets, which is the basis of Hyldahl's defamation claim against the Appellants in his amended counterclaim. SLG sought damages under the Pennsylvania Uniform Trade Secrets Act and for a breach of fiduciary duty. SLG uses the same facts to support its claim for damages in the complaints that it now claims could not be arbitrated until SLGS was made a party to the proceedings even though the two corporations basically functioned as one. The parties also engaged in limited discovery. *See* Brief for Appellants at 27. Further, SLG sought an injunction in the trial court, enjoining Hyldahl from engaging in any activities which violated the Agreement. The trial court granted this injunction on March 15, 2005, and our Court affirmed this grant on March 7, 2006. SLG filed its amended complaint in the trial court on June 20, 2005, following the trial court's grant of the preliminary injunction.

¶ 20 Here, the Appellants did not promptly raise the issue of arbitration but instead waited until they had filed a petition for preliminary injunction and initial and amended complaints in the trial court, Hyldahl had filed multiple answers and counterclaims, and the parties had engaged in discovery. It is plain to see that SLG and by association the remaining parties, who are the officers of SLG and its sister entity, SLGS, accepted the judicial process when it sought and won injunctive relief from the trial court and by extension this Court and continued to pursue their claims against Hyldahl in the trial court. To allow the Appellants to take advantage

of the judicial process and then take the case to arbitration would be exceedingly unfair to Hyldahl. Because the Appellants sought relief from the judicial process and because the Appellants could have compelled arbitration for any damages related to the alleged misappropriation of confidential information by Hyldahl after filing its initial complaint, we find that they have waived their right to arbitration. *See GE Lancaster Inv., LLC v. American Express Tax and Bus. Servs., Inc.*, 920 A.2d 850, 856 (Pa.Super.2007); *Goral*, 683 A.2d at 934. *Cf. Keystone Tech. Group*, 824 A.2d at 1227 (finding no waiver where the docket only showed plaintiff's filing of the complaint, the sheriff's proof of service and the defendant's filing of preliminary objections before plaintiff's motion to compel arbitration).

¶ 21 As we have found waiver, we need not discuss the Appellants' remaining argument.

¶ 22 For the foregoing reasons, we affirm the trial court's order.

¶ 23 Order **AFFIRMED.**