

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2008

# Zimmer v. Cooperneff Advisors

Precedential or Non-Precedential: Precedential

Docket No. 05-1119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Zimmer v. Cooperneff Advisors" (2008). *2008 Decisions.* Paper 1296.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1296

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1119

———

STEVEN A. ZIMMER

v.

COOPERNEFF ADVISORS, INC.;
BNP PARIBAS SA,

Appellants

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-03816)
District Judge: Hon. Robert F. Kelly

———

Argued December 20, 2007

Before: SLOVITER, FUENTES, Circuit Judges, and
RESTANI[*], Judge

(Filed April 14, 2008)

———

Edward T. Colbert   (Argued)
Brian S. Mudge
Kenyon & Kenyon
Washington, D.C.  20005-0000

Susan K. Herschel

———

[*] Hon. Jane A. Restani, Chief Judge, United States Court of
International Trade, sitting by designation.

Hoyle, Fickler, Herschel & Mathes
Philadelphia, PA l9l07-0000

     Attorneys for Appellants

Robert L. Ebby   (Argued)
Hangley, Aronchick, Segal & Pudlin
Philadelphia, PA l9l03-0000

     Attorney for Appellee

——

OPINION OF THE COURT

——


SLOVITER, <u>Circuit Judge</u>.

     Before us is an appeal by CooperNeff Advisors, Inc. ("CooperNeff") of the District Court's order denying its motion to compel arbitration of the claim filed by its former employee, Steven A. Zimmer, on the ground that the arbitration clause in the employment agreement between Zimmer and CooperNeff was unconscionable and, alternately, that CooperNeff waived its right to compel arbitration by litigating its claims against Zimmer.

**I.**

     Zimmer, who holds a Ph.D. in economics from Harvard University, has worked in the financial industry since 1988, including at the Federal Reserve Bank of New York and at J.P. Morgan Chase. He developed an interest in hedge fund management while he was working as a portfolio manager at the Vanguard Group ("Vanguard"), and began to search for a new position in that capacity. During the latter part of 2002, Zimmer discussed terms of employment with several interested financial companies, including CooperNeff, a trading and investment firm.

2

As part of the interview with CooperNeff's chairman and CEO, Andrew Sterge, Zimmer discussed and demonstrated the capabilities of a stock trading model that he had developed and that he intended to use in his new employment. CooperNeff extended Zimmer a job offer by letter dated February 6, 2003, which stated that the formal agreement between the parties would be embodied in a forthcoming "Employment Agreement." The letter further stated that "[u]ntil the Employment Agreement has been finally negotiated, signed and approved by BNP Paribas' global headquarters, either CooperNeff or [Zimmer] may at any time terminate further participation in negotiating the terms of . . . employment with CooperNeff." App. at 173. Zimmer accepted CooperNeff's offer of employment. He alleges that by doing so, he forfeited approximately $370,000 in deferred compensation from Vanguard.

On March 26, 2003, the first day of Zimmer's employment, CooperNeff provided Zimmer with the Employment Agreement. Paragraph 8 of that agreement includes an arbitration clause covering "any and all legal or contractual disputes of any nature arising at any time (including after termination of employment) between [the employee] on the one hand and the Company and its affiliates on the other . . . ." App. at 177. The employee must first submit such disputes to the company's human resources department and, if not mutually resolved, the dispute would then be sent to an independent arbitrator.[1] Paragraph 8(c) explains:

> The types of claims and disputes that will be resolved under these procedures include all claims and disputes arising under this agreement or in connection with your employment by the Company; all claims arising from the terms and conditions of your employment; all claims arising from the termination of your employment . . . . However, the Company retains the right to bring any

---

[1] During oral argument, counsel for CooperNeff assured the court that if we held the motion to compel arbitration should have been granted, CooperNeff would not raise Zimmer's failure to follow the procedure required by paragraph 8.

3

> claims to enforce any of its rights in paragraph 6 of this agreement directly in a court of competent jurisdiction and the Company need not arbitrate any such claims.

App. at 177 (emphasis added).

Paragraph 6 is entitled "Exclusivity of Services, Non-Solicitation, Confidentiality, Intellectual Property, Return of Documents and Property upon Termination, and Enforcement Provisions." App. at 175. That paragraph contains six clauses setting forth the parameters of the substantive provisions listed in the title. For example, the intellectual property clause states that any intellectual property that the employee "invented, discovered, produced or the like using (in whole or in part) any of the Company's resources or on Company time . . . will be the sole and exclusive property of the Company." App. at 176. The effect of the retention language underlined above is to authorize CooperNeff to file a law suit against an employee on any issue covered in paragraph 6.

Zimmer testified that he initially refused to sign the Employment Agreement because he was concerned about how the intellectual property clause in paragraph 6 would be applied to his model. He stated that he brought his concerns regarding that clause to CooperNeff's human resources personnel and then to Sterge. Sterge stated that the offer letter did not contemplate his negotiation of the terms of the agreement and that Zimmer would be terminated if he did not sign the agreement as drafted. Zimmer eventually signed the agreement.[2]

While Zimmer worked at CooperNeff, he implemented his model as part of a hedge fund called the CooperNeff Quantitative Strategies Fund. Zimmer testified that he attempted to keep the model isolated from CooperNeff's systems to the

---

[2] Zimmer's signature on the Employment Agreement is dated March 31, 2003, but Zimmer testified that he did not sign the agreement until sometime in mid-May. CooperNeff does not argue otherwise. Zimmer's account is corroborated by Sterge's testimony that he spoke with Zimmer about his failure to sign the agreement at some point in May.

4

greatest extent possible. For example, he did not permanently install the model in CooperNeff's system, instead bringing the model to work every day on a portable hard drive.

In June of 2004, after Zimmer had been at CooperNeff for almost fifteen months, he gave notice that he would be resigning his position at CooperNeff effective July 2, 2004. He intended to work at another hedge fund, QVT. At his exit interview on June 30, 2004, he was handed a copy of an unfiled complaint and motion for an injunction. The following day, CooperNeff filed a "Complaint in Equity" against Zimmer in Pennsylvania's Montgomery County Court of Common Pleas seeking injunctive and other remedies under six different theories: inadequacy of legal relief, breach of contract, misappropriation of trade secrets, breach of fiduciary duty, conversion, and unfair competition. On July 1, 2004, the state court entered a temporary restraining order ("TRO") enjoining Zimmer from disclosing or using the model.[3] The parties agree that at some point during the state court proceedings, three depositions were taken, two by Zimmer and one by Cooperneff.

Zimmer and CooperNeff proceeded to litigate on two fronts for the remainder of 2004. Zimmer filed a federal complaint and sought to remove CooperNeff's state-court action to the United States District Court for the Eastern District of Pennsylvania. Because Zimmer had not yet received a copyright for the model, the District Court dismissed his federal action for lack of subject matter jurisdiction and remanded the action to state court.

Zimmer filed his application for a copyright on the trading model on July 30, 2004, and he obtained it by August 11. Zimmer then filed the federal complaint underlying this appeal, alleging copyright infringement, defamation, conversion, tortious interference with contractual relations, and misappropriation of trade secrets. On August 19, following a

---

[3] The TRO was subsequently withdrawn after QVT indicated that it would not hire Zimmer before the resolution of his dispute with CooperNeff.

5

hearing on Zimmer's motion for a preliminary injunction and TRO, the District Court granted him a TRO ordering CooperNeff to "cease all use of Plaintiff's computer model and any copies, derivatives, modifications, or adaptations of the computer model until the Court enters an order with respect to Plaintiff's Motion for a preliminary injunction." Zimmer v. CooperNeff Advisors, Inc., No. 04-3816, 2004 WL 2933979, at *2 (E.D. Pa. Dec. 20, 2004). The District Court then scheduled a preliminary injunction hearing for September 21.

On September 7, CooperNeff answered Zimmer's complaint and asserted two counterclaims seeking declaratory judgments pertaining to Zimmer's copyright ownership of the model. On September 13, Zimmer answered CooperNeff's complaint in state court. On September 17, CooperNeff filed an amended answer to Zimmer's federal complaint, for the first time asserting a right to arbitration.

On September 20, the day before the scheduled preliminary injunction hearing, CooperNeff filed a motion to compel arbitration and stay further proceedings. The District Court heard argument on that motion and denied it from the bench before commencing the preliminary injunction hearing. On the second day of the hearing, CooperNeff attempted to renew its motion to compel arbitration. On December 20, the District Court filed a memorandum opinion denying CooperNeff's "renewed" motion to compel, holding that the arbitration agreement was both procedurally and substantively unconscionable and that CooperNeff had waived its right to compel arbitration. See id. at *6-*9. CooperNeff timely appealed.

## II.

The District Court had jurisdiction under the Copyright Act, 17 U.S.C. § 101 et seq., and 28 U.S.C. §§ 1331, 1338, and 1367. Although there has been no final order, we have jurisdiction under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., which permits appeal from an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1).

6

We exercise plenary review over questions of law concerning the applicability and scope of arbitration agreements. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 176 (3d Cir. 1999). To the extent that the District Court's decision relied on factual findings, we review those findings for clear error. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 53-54 (3d Cir. 2001). We review the District Court's determination of state law de novo. Kowalsky v. Long Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995).

## III.

The District Court provided alternate grounds for its denial of CooperNeff's motion to compel, namely that the arbitration clause was unconscionable and that CooperNeff had waived its right to compel arbitration by proceeding with its litigation against Zimmer in state court. We discuss each holding in turn.

## A.

The District Court applied Pennsylvania law in holding that the Employment Agreement's arbitration clause was both procedurally and substantively unconscionable. Procedural unconscionability refers specifically to "the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." Harris, 183 F.3d at 181. Substantive unconscionability looks to whether the arbitration provision "unreasonably favors the party asserting it." Salley v. Option One Mortgage Corp., 925 A.2d 115, 119 (Pa. 2007).

The District Court found procedural unconscionability on the basis of the "extreme inequality in bargaining position between Zimmer and CooperNeff at the time Zimmer signed the Employment Agreement," and CooperNeff's unwillingness to negotiate that agreement. Zimmer, 2004 WL 2933979, at *6. In Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 258-60, 266-68 (3d Cir. 2003), the primary authority relied upon by the District Court, we held that an employment agreement that compelled minimally-educated crane operators in the Virgin Islands to

7

arbitrate their claims and pay for that arbitration was procedurally and substantively unconscionable. In discussing procedural unconscionability, we stated that "[t]he arbitration agreement in the Hourly Employee Contract was prepared by the party with excessive bargaining power and presented to plaintiffs for signature on a take-it-or-leave-it basis." Id. at 266 (citation and internal quotation marks omitted). We elaborated that the employer, "which conducts business throughout the nation and the world, clearly possessed more bargaining power than two long-time equipment operators with limited educational backgrounds and, at best, very narrow options for other employment." Id.

In contrast to the employees in Alexander, Zimmer is a Harvard-educated economist, previously employed by J.P. Morgan Chase and the Federal Reserve Bank of New York. Zimmer had been the manager of a two billion dollar fund at Vanguard, had multiple offers of employment at the time he accepted CooperNeff's job offer, quickly secured a new position when he decided to leave CooperNeff, and, according to counsel at oral argument, is currently working in the industry.

Zimmer was told by CooperNeff when it offered him the job that the offer was contingent on the negotiation of a signed Employment Agreement and that the negotiation of that agreement could be terminated by either party at will. CooperNeff presented Zimmer with the Employment Agreement on his first day of work. There is no evidence that Zimmer either sought a copy of the agreement or sought to negotiate the agreement before accepting the job offer or beginning his employment. Zimmer noted his concern with the intellectual property provision in paragraph 6 of the agreement, but agreed to sign the agreement after speaking with Sterge. Thereafter, he remained at CooperNeff for more than a year. There is no evidence that Zimmer challenged the provision of the Employment Agreement that reserved judicial remedies exclusively for CooperNeff.

Zimmer's educational background and field of employment are highly distinguishable from the crane operators in Alexander. So too is the context in which the "take-it-or-

8

leave-it" ultimatum was issued. Zimmer was employed by Vanguard when he accepted CooperNeff's offer of employment, and accepted that offer with full knowledge that an employment agreement had not yet been reached. He does not allege that he was denied an opportunity to negotiate the contract before accepting CooperNeff's offer of employment; rather, he alleges that the company forced him to sign the agreement after he had already been on CooperNeff's payroll for over a month.[4]

In summary, Zimmer was a highly-educated party with various employment opportunities who accepted an employment offer without first examining the terms of that employment and who now seeks to nullify the contract that he ultimately signed. Under these circumstances, considering the entire context of Zimmer's dealings with CooperNeff and his employment opportunities at the time he accepted CooperNeff's job offer, we conclude that Zimmer did not lack a meaningful choice in accepting the challenged arbitration provision. Therefore, we reverse the District Court's holding that the arbitration clause was unenforceable by reason of unconscionability.

**B.**

In considering substantive unconscionability, the District Court noted that this court and the Pennsylvania Superior Court disagreed whether there was a presumption of unconscionability under Pennsylvania law when an arbitration contract limits one party to arbitration but permits the other to reserve access to the courts. Specifically, in Harris, this court stated that "[a]s long as the requirement of consideration is met, mutuality of obligation is present, even if one party is more obligated than the other." 183 F.3d at 181 (citing Greene v. Oliver Realty, Inc., 526 A.2d 1192, 1195 (Pa. Super. Ct. 1987)). Three years after our

_____

[4] Zimmer contends that CooperNeff refused to negotiate the Employment Agreement after he began working at the company. Nonetheless, while it appears that Zimmer expressed considerable concern about the intellectual property clause in paragraph 6 of the agreement, Zimmer does not assert that he challenged the arbitration clause in paragraph 8.

decision in <u>Harris</u>, the Pennsylvania Superior Court stated that "under Pennsylvania law, the reservation by [one party] of access to the courts for itself to the exclusion of [another] creates a presumption of unconscionability, which in the absence of 'business realities' that <u>compel</u> inclusion of such a provision in an arbitration provision, renders the arbitration provision unconscionable and unenforceable under Pennsylvania law." <u>Lytle v. Citifinancial Servs., Inc.</u>, 810 A.2d 643, 665 (Pa. Super. Ct. 2002) (emphasis in original). Based on <u>Lytle</u>, the District Court held that CooperNeff had not shown any business realities justifying its exclusive right of access to the courts, and concluded that the arbitration clause was substantively unconscionable.

Lytle was not reviewed by the Pennsylvania Supreme Court. However, that court recently undertook an examination of the unconscionability issue in the context of an arbitration clause, confirming that the party challenging an arbitration agreement has the burden to demonstrate that the agreement is <u>both</u> procedurally and substantively unconscionable. <u>Salley</u>, 925 A.2d at 119-20. Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct. Nonetheless, we take this occasion to note our concern about the District Court's holding on substantive unconscionability as well.

We deem it significant that the <u>Salley</u> decision rejected the presumption relied upon by the District Court in finding substantive unconscionability. The arbitration clause at issue in <u>Salley</u> reserved judicial remedies for lenders in the sub-prime lending industry. <u>Id.</u> at 127. In expressly abrogating <u>Lytle</u>, the Pennsylvania Supreme Court concluded that "the burden of establishing unconscionability lies with the party seeking to invalidate a contract, including an arbitration agreement, and there is no presumption of unconscionability associated with an arbitration agreement merely on the basis that the agreement reserves judicial remedies associated with foreclosure" for lenders, to the exclusion of borrowers. <u>Id.</u> at 129. <u>Salley</u> did not hold that an arbitration clause reserving remedies could never be

10

unconscionable; rather, it held that there "is a facially apparent business justification for such an exception [in the context of mortgage lending], as the safeguards thereby preserved assure regularity and consistency for the benefit of both lender and borrower, and accordingly, there are sound pragmatic and policy reasons why foreclosure proceedings should be pursued in a court of law." Id. at 128.

In this case as well, CooperNeff asserted that there are plausible reasons why it needed to reserve for itself the option for access to the courts. Nonetheless, because the District Court relied on Lytle's discredited presumption of unconscionability and did not place the burden to demonstrate substantive unconscionability on Zimmer, it is questionable whether the District Court's conclusion could be upheld. We do not hold, and we believe the Pennsylvania Supreme Court did not hold, that unequal access to the courts can never be the basis for finding an arbitration agreement unconscionable. The conclusion in each case will depend on the circumstances. We proceed to consider waiver, the final basis for the District Court's order.

## IV.

In considering the District Court's alternate ground for denying CooperNeff's motion to compel, i.e., its holding that CooperNeff had waived its right to compel arbitration, we recognize at the outset that the prevailing mood is to favor arbitration as an effective method of dispute resolution. Nonetheless, not every motion to compel arbitration must be granted. One of the accepted defenses to such a motion is that the party has waived its right to compel arbitration.

The District Court framed its holding as recognizing a "non-traditional" form of waiver. Zimmer, 2004 WL 2933979, at *8. It held that CooperNeff had waived its right to compel arbitration by initiating litigation against Zimmer in state court and then continuing to litigate its rights to the disputed trading model in that court. The Court concluded that because CooperNeff sought judicial enforcement of its purported intellectual property rights rather than arbitration, "Zimmer

11

should be allowed to seek judicial action as well in his attempt to enforce the intellectual property rights that CooperNeff alleges are its own." Id.

On its appeal to this court, CooperNeff raised two distinct challenges to the District Court's decision: (1) that the District Court should have left the issue of waiver for an arbitrator, rather than deciding that issue; and (2) that the District Court erred in finding waiver under the circumstances of this case. While this appeal was pending, another panel of this court filed its opinion in Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007), holding that "waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide . . . ." In light of that opinion, CooperNeff conceded that the issue of waiver is properly addressed by the court where, as here, waiver is based on litigation conduct. Therefore, we need only address whether the District Court erred in holding that CooperNeff waived its right to compel arbitration by virtue of its litigation conduct.

In Ehleiter we noted that "'prejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct." Id. at 222 (quoting Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992)). We stated that the "nonexclusive list of factors relevant to the prejudice inquiry" includes the timeliness of the motion to compel arbitration, the degree to which the merits of the non-movant's claims have been contested by the party moving for arbitration, whether the non-movant is otherwise aware of the movant's intention to seek arbitration, the extent of non-merits motion practice that has transpired, the movant's assent to the trial court's pretrial orders, and the degree to which the parties have engaged in discovery. Id. (citing Hoxworth, 980 F.2d at 926-27). Although we have stated that "waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery," id. at 222-23 (citations, alterations and internal quotation marks omitted), we have also held that "the length of the time period involved alone is not determinative," Palcko v. Airborne Express, Inc., 372 F.3d 588, 598 (3d Cir. 2004).

12

As we noted above, the District Court's conclusion that CooperNeff had waived its right to compel arbitration was based solely on CooperNeff's initiation and pursuit of litigation in the state court. The District Court did not discuss whether Zimmer was prejudiced by CooperNeff's state court litigation. Just as "the length of the time period involved alone is not determinative," id., our precedents do not support the notion that the single consideration relied upon by the District Court is sufficient to find prejudice, and therefore waiver.

That is not to say that CooperNeff's role in affirmatively initiating litigation to resolve its dispute with Zimmer is immaterial. We recently reiterated that the list of factors set forth in Hoxworth is "nonexclusive," and that we looked to the case law of our court and others in compiling that list. Ehleiter, 482 F.3d at 222. Although we have not had occasion to consider the prejudicial effect that follows from the initiation of litigation by the party seeking to compel arbitration, other courts have factored a party's affirmative litigation conduct into their consideration of prejudice and waiver. See, e.g., Zwitserse Maatschappij van Levensverzekering en Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1478, 1479-80 (2d Cir. 1993); S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990). Because the parties rely, at least in part, on Pennsylvania law,[5] it is particularly significant that the Pennsylvania Superior Court recently found waiver where the

---

[5] The parties did not meaningfully address whether state or federal law controls the waiver analysis. Because both Pennsylvania and federal courts have long emphasized the importance of prejudice to that analysis, see, e.g., Hoxworth, 980 F.2d at 925; Kwalick v. Bosacco, 478 A.2d 50, 52 (Pa. Super. Ct. 1984), we need not decide the broader question of which law governs in this case. But see Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that the FAA, and not state law, supplies the standard for waiver because "the question of whether a party has waived its right to compel arbitration directly concerns the allocation of power between courts and arbitrators"). Instead, we focus on the factors informing the prejudice analysis and the importance of a party's initiation of suit to that analysis.

13

parties seeking to compel arbitration filed a complaint, "sought and won injunctive relief from the . . . court . . . and continued to pursue their claims" in court, resulting in exceeding unfairness to the opposing party. Stanley-Laman Group, Ltd. v. Hyldahl, 939 A.2d 378, 387-88 (Pa. Super. Ct. 2007).

That court stated that "the mere filing of a complaint does not demonstrate waiver of the right to arbitration." Id. at 387 (citing Keystone Tech. Group, Inc. v. Kerr Group, Inc., 824 A.2d 1223, 1226 (Pa. Super. Ct. 2003)). However, the court did note the "atypical[ity]" of the events in that case, as the parties seeking to compel arbitration consisted of the company that had initiated litigation, a sister company, and their shared owners, all of whom were named in a counterclaim filed by the party defending that litigation. Id. The court considered that the basis of the complaint and counterclaims were identical, that the parties had engaged in limited discovery, and that the parties seeking to compel arbitration had obtained an injunction in court. Id. Because those parties "sought relief from the judicial process" when they "could have compelled arbitration," the court found that they had waived their right to compel arbitration. Id. at 388.

In Zwitserse, the Court of Appeals for the Second Circuit found that the initiation of judicial proceedings may lead to waiver "when a party has unfairly used litigation prior to commencing arbitration in a way that might prejudice the opposing party." 996 F.2d at 1479 (citing Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985)). In that case, the party seeking to compel arbitration had initiated litigation by submitting a request for a preliminary witness hearing in a Dutch court, id., and then "unfairly profit[ed] from the benefits of discovery that it most likely would not otherwise have been entitled to in arbitration," id. at 1480. Therefore, the court concluded that the defending party had suffered prejudice and that waiver was appropriate.

Finally, in S & H Contractors, the Court of Appeals for the Eleventh Circuit noted that the party seeking to compel arbitration, S & H, had "acted inconsistently with its arbitration right" by initiating litigation and substantially invoking the

14

judicial process before seeking to compel arbitration. 906 F.2d at 1514. Again, however, initiation of litigation did not by itself justify a denial of the motion to compel on the basis of waiver. Rather, the court considered that "S & H waited eight months from the time it filed its complaint to the time it demanded arbitration," that the defending party had filed two motions during that time period, and that S & H had taken five depositions prior to demanding arbitration. Id. Accordingly, the court found sufficient prejudice to justify a holding of waiver.

It is evident from these decisions that whereas one party's initiation of litigation may play a role in the waiver analysis, that consideration alone is insufficient to find prejudice. The courts referred to above looked beyond the mere initiation of litigation to consider the extent to which the party seeking to compel arbitration took unfair advantage of the litigation process to the detriment of the other party. In the absence of the District Court's finding whether Zimmer suffered the requisite prejudice, we do not undertake that determination but merely refer to some relevant factors on the record to be considered.

For example, there may well have been some prejudice to Zimmer who was required to hire (and pay) an attorney to defend the state suit. Zimmer emphasizes that the commencement of discovery and taking of depositions are all relevant to this inquiry. At oral argument, CooperNeff's counsel confirmed that the state court action required limited discovery and the taking of three depositions, two by Zimmer and one by CooperNeff. We also note that the combined proceedings in the state and federal court included two successful motions for TROs and a preliminary injunction hearing that lasted at least two days. There was also a suggestion at the oral argument that CooperNeff has still not withdrawn its state court complaint, a fact that neither counsel who argued before us could confirm.

CooperNeff responds that it needed to have access to a forum that could act promptly to protect its trade secrets by enjoining Zimmer from providing those secrets to his new employer, a competitor of CooperNeff. CooperNeff argued before us that it could not have waived its right to compel arbitration by initiating the state court action because it had a

contractual right to bring that action under the carve-outs from the requirement to arbitrate in the Employment Agreement. Assuming the validity of CooperNeff's argument that it required immediate access to state court for a temporary restraining order and/or preliminary injunction, we note that CooperNeff's state court action was not limited to that claim. CooperNeff's state court complaint asserted six different counts: the need for injunctive relief, breach of contract, misappropriation of trade secrets, breach of fiduciary duty, conversion, and unfair competition. Paragraph 6 covers exclusivity of services, non-solicitation, confidentiality, intellectual property, and the return of documents and property upon termination. By asserting claims such as breach of fiduciary duty and unfair competition, CooperNeff seeks to enforce rights plainly beyond those that were necessary for immediate judicial action. The breadth of the state court complaint may be one of the factors that the District Court will take into consideration in making its finding of prejudice, vel non.[6]

In light of the absence of findings as to prejudice, we think it prudent to remand to the District Court so that it may consider and make findings as to all relevant factors demonstrating prejudice, including CooperNeff's initiation of the state court litigation, its failure to withdraw its claims after it had been granted the requested preliminary relief, and its interposition of counterclaims in federal court which appear, at least facially, to raise as defenses the same claims it presses in state court. The District Court may decide that CooperNeff has elected to pursue judicial action as its remedy and should not be entitled to proceed with arbitration. Or, we hasten to add, it may decide the contrary.

---

[6] CooperNeff also argues that its complaint is not identical to Zimmer's, and therefore it is entitled to litigate its claims while forcing Zimmer to arbitrate the claims that he has asserted. We leave to the District Court the issue whether CooperNeff's state court complaint and its federal court counterclaim exceed the scope of the clause reserving its judicial remedies.

16

## V.

For the above-stated reasons, we will vacate the judgment of the District Court and remand for proceedings consistent with this opinion.