Janice QUILLOIN, an individual,
on behalf of herself and others
similarly situated, Plaintiff,

v.

TENET HEALTHSYSTEM PHILA-
DELPHIA, INC., Tenet Healthcare
Corporation, and Tenet HealthSystem
Hahnemann, LLC, Defendants.

Civil Action No. 09–5781.

United States District Court,
E.D. Pennsylvania.

Jan. 20, 2011.

Gary F. Lynch, New Castle, PA, Gerald D. Wells, III, Faruqi & Faruqi, Jenkintown, PA, Trevan P. Borum, Philadelphia, PA, for Plaintiff.

Christina Tellado–Winston, James N. Boudreau, Greenberg Traurig LLP, Michele Halgas Malloy, Littler Mendelson PC, Philadelphia, PA, for Defendants.

## *MEMORANDUM*

ANITA B. BRODY, District Judge.

Plaintiff Janice Quilloin ("Plaintiff" or "Quilloin") has brought a nationwide collective [1] action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19

---

1. Group actions brought under the Fair Labor Standard Act (FLSA) are often referred to as "collective actions," to be distinguished from "class actions" under Rule 23 of the Federal Rules of Civil Procedure. FLSA collective actions require plaintiffs to opt in, whereas Rule 23 class actions require plaintiffs to opt out. *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379 (3d Cir.2007) ("Unlike class actions governed by Rule 23 of the Federal Rules of Civil

(2006), and a state-wide class action under the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons.Stat. §§ 333.101–333.115 (2009); the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons.Stat. §§ 260.1–260.12 (2009); and Pennsylvania common law against Defendants Tenet HealthSystem Philadelphia ("Tenet Philadelphia"), Tenet Healthcare Corporation ("Tenet"), and Tenet HealthSystem Hahnemann, LLC ("Hahnemann") (collectively, "Defendants"). First Am. Compl. 1–2, ECF No. 19. Plaintiff alleges that Defendants forced her and others to work through their meal breaks without pay. *Id.* This court has jurisdiction pursuant to the FLSA; the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) (2006); and 28 U.S.C. § 1367 (2006). In response, Defendants have filed a motion to dismiss or, in the alternative, to stay proceedings and compel compliance with an agreement to arbitrate. Mot. Dismiss, June 10, 2010, ECF No. 28.[2] For the reasons set forth below, I will deny Defendants' motion without prejudice.

## I. Background[3]

Plaintiff is a Registered Nurse with an Associate Degree in the Science of Nursing. Quilloin Decl. ¶¶ 3–4, ECF No. 34. She worked at Hahnemann University Hospital from October of 2006 until February of 2008, and then again from December of 2008 until November of 2009. *Id.* ¶¶ 8, 11; First Am. Compl. ¶ 10, ECF No. 19. Defendant Hahnemann owns Hahnemann University Hospital. Simmons Decl. ¶ 2, ECF No. 28. Defendant Tenet Philadelphia helps manage and control two hospitals in Philadelphia, including Hahnemann University Hospital. First Am. Compl. ¶ 14, ECF No. 19. Hahnemann and Tenet Philadelphia are both subsidiaries of Defendant Tenet, a health care services company whose subsidiaries, as of December 31, 2008, operated a total of 55 hospitals with over 14,000 beds. *Id.* ¶¶ 12–15.

Defendants maintain a "Meal Break Deduction Policy" at all of their facilities, according to which the computerized time and attendance system automatically deducts a thirty-minute meal period per work shift. *Id.* ¶¶ 26, 27. However, Quilloin alleges that she and other members of the classes often performed compensable work during their uncompensated meal breaks. *Id.* ¶ 29.

Thus Quilloin seeks to bring the FLSA collective action on behalf of herself and "[a]ll persons employed within the three years preceding the filing of this action by

Procedure, in which potential class members may 'opt out,' collective actions under the FLSA require potential class members to notify the court of their desire to 'opt in' to the action."); *see also* 29 U.S.C. § 216(b) (2006) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

**2.** To clarify, Defendants have filed a single motion seeking to compel arbitration, arguing primarily that I should dismiss the case and compel arbitration, and secondarily that I should stay the case and compel arbitration. Because I am not compelling arbitration, I need not choose between a dismissal and a stay. However, I note that the Third Circuit has previously held that a stay, rather than a dismissal, is the required course of action when compelling arbitration. *See Lloyd v. HOVENSA, LLC,* 369 F.3d 263, 269 (3d Cir. 2004); *see also Hopkins v. New Day Fin.,* 643 F.Supp.2d 704, 714 n. 5 (E.D.Pa.2009).

**3.** Because the standard of review on a motion to compel arbitration is the same as the standard of review on a motion for summary judgment, *see* Part II *infra,* the facts are to be interpreted in the light most favorable to the non-moving party. *See Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). All facts are taken from Plaintiff's statements of the case and any undisputed affidavits or other record exhibits.

Defendant whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid 'meal break.'" *Id.* ¶ 45.

She similarly seeks to bring a state law class action on behalf of herself and "[a]ll persons employed within the three years preceding the filing of this action by Defendants at any of its Pennsylvania facilities, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid 'meal break.'" *Id.* ¶ 46.

On December 4, 2009, Quilloin filed suit in this court against Tenet and Tenet Philadelphia. On February 19, 2010, Tenet Philadelphia answered, and asserted as an affirmative defense the existence of an agreement to arbitrate employee disputes with the employer. Answer 8–9, Feb. 19, 2010, ECF No. 9. Also on February 19, 2010, Tenet filed a motion to dismiss for lack of personal jurisdiction, alleging that it was four corporate layers removed from Quilloin's actual employer and lacked minimum contacts with Pennsylvania. Mem. Supp. Mot. Dismiss 1–2, Feb. 19, 2010, ECF No. 10. On March 15, 2010, Quilloin responded to Tenet's Motion to Dismiss, and on March 29, 2010, Tenet replied to Quilloin's response.

On April 15, 2010, the parties attended a Rule 16 conference. On April 21, 2010, the parties submitted a joint stipulation, according to which Plaintiff would voluntarily dismiss another pending case, *Janice Quilloin v. Tenet HealthSystem Philadelphia, Inc. et al.*, No. 10–1379, and amend her complaint in this matter to include those Pennsylvania state law claims asserted in the other matter. Joint Stipulation ¶¶ 1–2, Apr. 21, 2010, ECF No. 18. The parties further stipulated that such amendment would not moot the pending motion to dismiss for lack of personal jurisdiction, and that the parties would conduct jurisdictional discovery by July 15, 2010. *Id.* ¶¶ 4–5.

On April 23, 2010, Plaintiff filed her first amended complaint against Tenet, Tenet Philadelphia, and Hahnemann. *See* First Am. Compl., ECF No. 19. On May 13, 2010, Tenet Philadelphia and Hahnemann answered, again invoking Plaintiff's agreement to arbitrate as an affirmative defense. Answer 14, May 13, 2010, ECF No. 25.

On June 10, 2010, Tenet, Tenet Philadelphia, and Hahnemann filed a motion to dismiss or, in the alternative, to stay proceedings and compel compliance with the agreement to arbitrate. Mot. Dismiss, June 10, 2010, ECF No. 28. Six days later, Defendants filed a motion for a protective order in response to allegedly extensive discovery requests from Plaintiff. Mot. Protective Order, ECF No. 29.

Following a telephone conference on August 12, 2010, Tenet withdrew its motion to dismiss for lack of personal jurisdiction, which mooted Defendants' motion for a protective order. Notice, Aug. 13, 2010, ECF No. 42. Thus, all that remains for my consideration is Defendant's June 10th motion to dismiss or, in the alternative, to stay proceedings and compel compliance with the agreement to arbitrate.

Around the time when Quilloin began her periods of employment, in October of 2006 and in January of 2009,[4] she signed an acknowledgment form stating:

---

4. Quilloin initially claimed not to have signed such a form in October of 2006, and only admitted to signing the acknowledgment in January of 2009. *See* Quilloin Decl. ¶ 9, ECF No. 34 ("During my employment with Defendants from October, 2006 through February, 2008, I was never requested to execute, and, indeed, did not execute, any agreement to arbitrate any claims I might have against Defendants."). Defendants subsequently produced an "Employee Acknowledge Form," stating "I hereby voluntarily agree to use the

I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forgo any right we each may have had to a jury trial on issues covered by the Fair Treatment Process.

Reply Ex. A, ECF No. 39.[5] Quilloin has stated that she was given no time to review the document, that she was not permitted an opportunity to have it reviewed by counsel, that she was presented with the form on a "take it or leave it basis," and that she had no choice but to sign given her need to financially support herself. Resp. 4, ECF No. 33; Quilloin Decl. ¶¶ 15–19, ECF No. 34.

The Fair Treatment Process (FTP) states that it

[a]pplies to all employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the company or the termination of employment. The only disputes or claims not covered by the FTP are those listed in the "Exclusions and Restrictions" section below. Examples of the type of disputes or claims covered by the FTP include claims for wrongful termination of employment, breach of contract, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and its amendments or any state or local discrimination laws, tort claims, or any other legal claims and causes of action recognized by local, state or federal law or regulations.

Mot. Dismiss Ex. B at 1, ECF No. 28. In the "Exclusions and Restrictions" section, the FTP reads:

any non-waivable statutory claims ... are not subject to exclusive review under the FTP. This means that you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, re-

Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet" and signed by Janice Quilloin on October 9, 2006. Reply Ex. A, ECF No. 39. Upon request of the Court, Plaintiff filed a supplemental submission "acknowledging signing that document" but emphasizing her "lack of recall" of that act. *See* Supplemental Submission, Dec. 1, 2010, ECF No. 46.

5. This language is from the 2006 acknowledgment form. The 2009 acknowledgment form is not materially different on this point, but reads:

I hereby voluntarily agree to use the Company's Fair Treatment Process and to sub-

mit to final and binding arbitration any and all claims and disputes except "Excluded Issues" that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process.

Reply Ex. B, ECF No. 39.

gardless of whether you decide to use the FTP to resolve them. However, if such an agency completes its processing of your action against the company, you must use the FTP if you wish to pursue your claim (although Steps 1 through 4 may be skipped).

*Id.* at 7. Steps 1 through 3 require employees to proceed through the corporate hierarchy before filing a claim in arbitration. At each step, a response "will be provided ... as soon as possible, usually within seven calendar days." *Id.* at 3. At Step 4, the dispute is heard by a committee "as soon as possible, usually within 30 days." *Id.* at 4. If an employee does not accept the committee's decision, he or she can submit the dispute to arbitration. Describing the arbitration process, the FTP states:

> The arbitration will be administered by the American Arbitration Association ("AAA"). The company and you will share the cost of AAA's filing fee and the arbitrator's fees and costs, but your share of such costs shall not exceed an amount equal to one day's pay (for exempt employees), or eight times your hourly rate (for non-exempt employees), or your local court civil filing fee, whichever is less. You and the company will be responsible for the fees and costs of your own respective legal counsel, if any, and any other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts.

*Id.* at 6. The FTP further states that both company and employee "may be represented by counsel at arbitration during Step 5 at each parties' own expense." *Id.* at 8. However, the FTP also grants to the arbitrator "the authority to award any remedy that would have been available to you had you litigated the dispute in court under applicable law," *id.* at 8, and states as a preliminary matter that "no remedies that otherwise would be available to you or the company in a court of law will be forfeited

by virtue of the agreement to use and be bound by the FTP," *id.* at 2.

Based on this agreement, Defendants assert that Quilloin must proceed with her claims via individual arbitration. Quilloin responds 1) that her claims are not within the scope of the agreement, 2) that the agreement is invalid for being unconscionable and entered into under duress, 3) that Defendants should be judicially estopped from compelling arbitration, and 4) that Defendants have waived their right to compel arbitration.

## II. Legal Standard

■ The Federal Arbitration Act ("FAA") codifies a strong federal policy in favor of arbitration. *Alexander v. Anthony Int'l L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). Section 4 states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement .... [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (2006).

■ However, the FAA's command that federal courts enforce arbitration agreements also assumes that "the making of the agreement for arbitration ... is not in issue." *Id.* When the existence of a valid agreement to arbitrate is in dispute, courts must carefully analyze claims of invalidity. *Hopkins v. New Day Fin.*, 643 F.Supp.2d 704, 713 (E.D.Pa.2009) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980)). The standard of review has been described as follows:

The Court, in considering a motion to compel arbitration, which is opposed on the ground that no valid agreement to arbitrate had been entered into by the parties, should view the facts in a light most favorable to the party opposing arbitration and give them the benefit of all reasonable doubts and inferences. This is the same standard used by the Court in resolving a summary judgment motion. Accordingly, the Court may consider all affidavits, exhibits and discovery in the record. If after reviewing the record, the Court finds that there is a doubt as to the existence of a valid agreement to arbitrate, the matter should be submitted to a jury upon a proper demand.... Accordingly, the Court must determine whether a factual dispute exists as to the validity of the agreement and, if so, allow a jury to decide whether there was a valid agreement to arbitrate.

*Hopkins,* 643 F.Supp.2d at 713–14 (citing *Par–Knit Mills,* 636 F.2d at 54 & n. 9).

■ As a general principle of contract law, when a genuine issue exists on a matter of contract interpretation, the question should be submitted to a jury for resolution. On a matter of contract construction, however, the question can be resolved by the judge as a matter of law. *See Tracinda Corp. v. DaimlerChrysler*

*AG,* 502 F.3d 212, 229–30 (3d Cir.2007) (citing *John F. Harkins Co. v. Waldinger Corp.,* 796 F.2d 657, 659 (3d Cir.1986) ("Contract interpretation is a question of fact .... [C]ontract construction is a question of law ....")).[6]

## III. Discussion

■ As a preliminary matter, Defendants should not be judicially estopped from moving to compel arbitration, nor have they waived their right to seek arbitration. Therefore, I will consider the merits of their motion. "A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir.2005). Because further proceedings are required on several aspects of the validity issue, I will deny without prejudice Defendants' motion.

### A. Defendants should not be estopped from exercising, and have not waived, their right to compel arbitration.

#### 1. Judicial Estoppel

■ Plaintiff argues that Defendant Tenet should be judicially estopped from compelling arbitration in light of its previous argument that it was four corporate

---

**6.** "The distinction between interpretation and construction is not always easy." *John F. Harkins Co. v. Waldinger Corp.,* 796 F.2d 657, 659 (3d Cir.1986). The Third Circuit has turned to Corbin for guidance:

"By 'interpretation of language' we determine what ideas that language induces in other persons. By 'construction of the contract,' as that term will be used here, we determine its legal operation—its effect upon the action of courts and administrative officials. If we make this distinction, then the construction of a contract starts with the interpretation of its language but does not end with it; while the process of interpretation stops wholly short of a deter-

mination of the legal relations of the parties."

*Id.* (quoting 3 Arthur Linton Corbin, Corbin on Contracts § 534, at 9 (2d ed.1960)). The Third Circuit has also quoted Professor Patterson: " 'Construction, which may be usefully distinguished from interpretation, is a process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context, and from a legal policy or policies that are applicable to the situation.' " *Ram Constr. Co. v. Am. States Ins. Co.,* 749 F.2d 1049, 1053 (3d Cir.1984) (quoting Edwin W. Patterson, *The Interpretation and Construction of Contracts,* 64 Colum. L.Rev. 833, 835 (1964)).

layers removed from employing Plaintiff and was not subject to personal jurisdiction in Pennsylvania.

 Plaintiff correctly identifies the three typical elements of judicial estoppel [7] : 1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent"; 2) the inconsistent positions were taken " 'in bad faith—i.e., with intent to play fast and loose with the court' "; and 3) application of the doctrine is " 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir.2001) (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir.1996); and *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir.1999)).

The Third Circuit has elaborated that a party generally cannot display "bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." *Montrose*, 243 F.3d at 778; *see also G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir.

2009) ("[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position."); *United States v. Pelullo*, 399 F.3d 197, 222–23 (3d Cir.2005); *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 559 n. 16 (3d Cir.2002).[8] The *Montrose* court also explained that "judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other." *Id.* at 781. Thus, tailoring the harm done requires an inquiry into the damage inflicted upon the dignity or authority of the court, not into the damage suffered by other parties.

In this case, Tenet's position that it did not employ Plaintiff may admittedly be inconsistent with its argument that Plaintiff should be forced to arbitrate her disputes with Tenet pursuant to her employment contract.

However, I never accepted or adopted Tenet's position that it did not employ Plaintiff and that it was not subject to personal jurisdiction in Pennsylvania.[9] Instead, Tenet withdrew the motion to

---

7. Federal law governs judicial estoppel analysis in this circuit. *G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009).

8. The Third Circuit held broadly in *Montrose* that "a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir.2001). The court then seemed to step back somewhat in *G–I Holdings*, writing more cautiously that "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position," and clarifying that it did "not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply." 586 F.3d at 261–62. Rather, the Third Circuit sought to reserve the right to apply judicial estoppel "to neutralize threats to judicial integrity however they may

arise." *Id.* at 262. As *G–I Holdings* is the more recent decision, I use its more cautious language, rather than the definitive pronouncements of *Montrose*. Regardless, the difference is not material in this instance, as Defendants have not demonstrated bad faith for judicial estoppel purposes under any test.

9. On the meaning of "accept" or "adopt," *Montrose* stated that "so long as the initial claim was in some way accepted or adopted, no further showing is necessary that the party 'benefitted' in any particular way." *Id.* at 783. The *Montrose* court then cited with approval *Anjelino v. New York Times Co.*, 200 F.3d 73, 100 (3d Cir.2000), which upheld a district court's invocation of judicial estoppel when plaintiffs sought to withdraw their representation that no further discovery was necessary. However, this language and this case do not disturb my conclusion that I did not accept or adopt Tenet's position that it did not

dismiss that asserted those claims. *See* Notice, Aug. 13, 2010, ECF No. 42. Therefore, because I never adopted Tenet's first argument, I find that their second argument was not advanced in bad faith. *See Montrose*, 243 F.3d at 778; *G–I Holdings*, 586 F.3d at 261 ("Here the District Court never accepted [defendant's] prior position. [Defendant] withdrew that position and asserted its new one ... before the Court ruled on its motion to dismiss.... Because the Court never relied on [defendant's] first position, we shall not bar its new one.").[10]

I also note that Tenet's arguably inconsistent positions have not affronted the dignity or authority of the court, and that it would be inappropriate to apply the "extraordinary remedy" of judicial estoppel to bar their attempt to compel arbitration at this juncture. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir.1996).

For all of these reasons, I will not judicially estop Defendant from seeking to compel arbitration at this time.

## 2. Waiver

Plaintiff also alleges that all Defendants have waived their right to seek arbitration.

■ As a preliminary matter, it is proper for the court to determine the waiver issue. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir.2007) ("[W]aiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide ...."). The Third Circuit has stated that "waiver of arbitration rights is not to be lightly inferred by federal courts." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir.2004) (internal citations and quotations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability."). Thus, " 'merely answering on the merits, asserting a counterclaim (or cross-claim)

employ Plaintiff, and that Tenet should not be judicially estopped from seeking to compel arbitration. First, *Anjelino* was decided before *Montrose*, and therefore I am better guided by the broad principles of law as stated in *Montrose*. Second, *Anjelino* stated only that the district court did not abuse its discretion in applying judicial estoppel, therefore providing minimal precedential guidance on the issue. Finally, issuing an affidavit declaring that no further discovery is necessary (and then seeking to backtrack from that position) is fundamentally different from filing a pleading that triggers discovery on an issue in the first instance (and then withdrawing that pleading so as to move the case forward on a different issue). The former would cause a court to abandon a course of action, only to have to retrace its steps. The latter represents a more continual progression towards resolution. Thus, *Montrose*'s citation to *Anjelino* has no bearing on this case, and, once again, I conclude that I did not accept or adopt Tenet's positions as stated in its first

motion to dismiss and decline to judicially estoppel Tenet from now seeking to arbitrate Plaintiff's claims.

**10.** As additional considerations, Plaintiff presents no evidence of bad faith on the part of Defendant. *See Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir.1996) ("[Judicial estoppel] is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best *and there is no evidence of intent to manipulate or mislead the courts.*" (emphasis added)). Moreover, Defendant's inconsistencies contain legal arguments, as opposed to purely factual statements, making them less likely examples of bad faith litigation. *See Palcsesz v. Midland Mut. Life. Ins. Co.*, 87 F.Supp.2d 409, 413 (D.N.J.2000) ("[C]ourts have been reluctant to apply judicial estoppel where a statement contains a legal conclusion, as distinguished from a purely factual inconsistency.").

or participating in discovery, without more, will not necessarily constitute a waiver.'" *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 925 (3d Cir.1992) (quoting *Gavlik Constr. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir.1975)). But waiver can result "where the demand for arbitration came *long* after the suit commenced and when both parties had engaged in *extensive* discovery." *Gavlik,* 526 F.2d at 783 (emphasis added). In short, prejudice is determinative. *Id.*

■ More specifically, the Third Circuit has set forth a non-exclusive list of factors to consider when assessing prejudice as relevant to a waiver determination. These include:

> [1] the timeliness or lack thereof of a motion to arbitrate ... [; 2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

*Hoxworth,* 980 F.2d at 926–27 (internal citations omitted). Applying the *Hoxworth* factors to this case, I find that Defendants did not waive their right to arbitrate.

### a. Timeliness or lack thereof

Defendants' motion to arbitrate was not untimely.

■ Time alone is not dispositive, nor is there a hard and fast boundary between reasonable and unreasonable delays in seeking to compel arbitration; nevertheless, it is instructive to examine the time frames and findings of other cases. For example, courts have found waiver after delays of eight months, *S & H Con-*

*tractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir.1990), eleven months, *Hoxworth,* 980 F.2d at 925, fifteen months, *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 196 (3d Cir.2010), seventeen months, *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir. 1986), and two years, *Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 759 (9th Cir.1988). Courts have not found waiver after delays of thirty-eight days, *Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 598 (3d Cir.2004), one-and-a-half months, *Wood v. Prudential Ins. Co. of Am.,* 207 F.3d 674, 680 (3d Cir.2000), two months, *PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1069 (3d Cir.1995), six months, *Tomcykoski v. Continuing Care Rx, Inc.,* No. 08–2014, 2009 WL 1816953, at *3, 2009 U.S. Dist. LEXIS 53961, at *8 (M.D.Pa. June 24, 2009), and ten months, *Bellevue Drug Co. v. Advance PCS,* 333 F.Supp.2d 318, 326 (E.D.Pa.2004).

With regard to a seven-month delay, as exists in this case, two Eastern District of Pennsylvania courts have come to different conclusions. In *Peltz v. Sears, Roebuck & Co.,* 367 F.Supp.2d 711 (E.D.Pa.2005), the court held that Sears had not waived its right to compel arbitration. Moreover, in *Peltz,* the defendants had filed two motions to dismiss, both parties responded to discovery requests, and a deposition had taken place. Yet the court still submitted the dispute to arbitration. *See id.* at 722. In *Eagle Traffic Control v. James Julian, Inc.,* 945 F.Supp. 834 (E.D.Pa.1996), the court found that the defendants had waived their right to compel arbitration. However, the Eagle Traffic court noted that "the seven month delay in demanding arbitration is not especially long when compared with other cases," and concluded that defendants had waived their right to compel arbitration based on the extensive discovery in which the parties had engaged. *Id.* at 835. Thus it seems that although a seven month delay may ap-

proach the borderline between reasonable and unreasonable, it still does not weigh in favor of waiver. Seven months remains on the low end of potential delays (as compared to the multi-year delays assessed in some cases), and appears almost presumptively acceptable (given the willingness of other district courts to compel arbitration even when substantial, although admittedly not extensive, discovery has taken place in the course of those seven months).

Not only is a seven-month delay, standing alone, not automatically unreasonable, but there are also additional considerations in the time calculus weighing in favor of reasonableness here. First, the arbitration agreement was at least referenced in the initial answer to the complaint. *See* Answer ¶¶ 15–16, Feb. 19, 2010, ECF No. 9. Moreover, Defendants' delay in actually moving to compel arbitration was at least partially motivated by my stated preference to determine the outstanding issues of personal jurisdiction and venue first, before being presented with a request for arbitration. Reply 17. Finally, Defendants in this case also explain their delay as due in part to their desire to await the Supreme Court's ruling in *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* —— U.S. ——, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).[11] Reply 17. Thus, in light of Defendants' early mid-range delay in moving for arbitration, and reasons for that delay, the first *Hoxworth* factor does not weigh in favor of a finding of waiver in this case.

### b. The degree to which Defendants contested the merits of Plaintiff's claims

Defendants have not contested the merits of Plaintiff's claims, as Plaintiff con-

cedes in her response. Resp. 23. Therefore, the second *Hoxworth* factor weighs against a finding of waiver.

### c. Whether Defendants informed Plaintiff of their intention to seek arbitration

 Defendants informed Plaintiff of their intent to seek arbitration. Defendant Tenet may not have advised Plaintiff that it sought to compel arbitration, but Defendants Tenet Philadelphia and Defendant Hahnemann both raised the arbitration provision in their affirmative defenses, *see* Answer ¶¶ 15–16, Feb. 19, 2010, ECF No. 9; Answer ¶¶ 17–18, May 13, 2010, ECF No. 25, as Plaintiff has conceded, Resp. 23. *See also Nat'l Fin. Partners Corp. v. Cunning,* No. 2008–37, 2009 WL 1939818, at *7, 2009 U.S. Dist. LEXIS 57718, at *19 (D.V.I. July 7, 2009) (finding that when one defendant raised an agreement to arbitrate as an affirmative defense, the plaintiff was put on notice, even though the other defendant did not include the same affirmative defense). Moreover, although the Rule 16 conference was not on the record, a later telephone conference memorializes Defendants' claim, and my acceptance of Defendants' claim, that the agreement to arbitrate was referenced at the Rule 16. Hr'g Tr. 6, Aug. 12, 2010. Thus, Plaintiff was put on notice of the arbitration agreement's existence and the possibility that Defendants may invoke it. The third *Hoxworth* factor also weighs against a finding of waiver as a result.

### d. The extent of Defendants' non-merits motion practice

There has indeed been some non-merits motion practice. Defendant Tenet filed a

---

**11.** The Supreme Court in *Stolt–Nielsen* held that arbitrators cannot impose class action arbitration on parties when their agreement to arbitrate is silent as to class action arbitration. *Stolt–Nielsen* is presumably relevant to this case on the grounds that Plaintiff's agree-

ment to arbitrate with Defendants makes no mention of the class action mechanism, yet Plaintiff would prefer to arbitrate on a class action basis whereas Defendants would prefer to arbitrate on an individual basis. *See also infra* note 22.

(now-mooted) motion to dismiss for lack of personal jurisdiction, Plaintiff responded, and Defendant replied.[12] This consideration may weigh in favor of a finding of waiver. However, I note that these exchanges have likely not been the "lengthy course of litigation" typically giving rise to waiver. *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir.1997).

### e. Defendants' assent to the court's pretrial orders

Defendants also consented to some pretrial orders of the court. The parties attended a Rule 16 conference and submitted various stipulations that were later signed by the court, including stipulations to the extension of time to respond to certain pleadings as well as to the conduct of jurisdictional discovery.[13] This factor, too, may therefore suggest waiver. However, these orders were relatively basic and mostly triggered by routine party stipulations as to timing.[14] Thus any indication of waiver on these grounds is slight.

### f. The extent to which both parties have engaged in discovery

■ Finally, the parties have not significantly engaged in discovery. Although Plaintiff served interrogatories and document requests on Defendants, Defendants did not answer, Plaintiff did not have to review materials, and Defendants did not submit their own requests to Plaintiff. Thus, this discovery is not "extensive," as a finding of prejudice and therefore waiver would require. *Great Western Mortg. Corp.*, 110 F.3d at 233.[15]

More specifically, courts finding that the right to compel arbitration has been waived are often faced with parties who

12. There has also been a (now-mooted) motion for a protective order briefed by both sides. However, because this motion was filed subsequent to Defendants' motion to compel arbitration, it does not factor into the *Hoxworth* waiver analysis. *See Nationwide Mut. Fire Ins. Co. v. Geo V. Hamilton, Inc.*, No. 08–0646, 2010 WL 1445554, at *8–9, 2010 U.S. Dist. LEXIS 35114, at *23 (W.D.Pa. Apr. 9, 2010) ("Courts generally base a determination regarding waiver on litigation conduct that takes place prior to a party asserting its arbitration rights.").

13. *See* Stipulation of Extension of Time to Answer, Plead, or Otherwise Move, Jan. 20, 2010, ECF No. 6; Stipulation and Order Extending Time for Plaintiff to Respond to Defendant Tenet Healthcare Corporation's Motion to Dismiss, Mar. 5, 2010, ECF No. 12; Notice of Hearing, Apr. 12, 2010, ECF No. 15; Joint Stipulation to Amend Complaint and Conduct Court–Ordered Jurisdictional Discovery, Apr. 27, 2010, ECF No. 20.

14. Orders issued after the filing of a motion to compel arbitration are removed from the waiver calculus. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 212–13 (3d Cir.2010).

15. *See also Nat'l Fin. Partners Corp. v. Cunning*, No.2008–37, 2009 WL 1939818, at *7, 2009 U.S. Dist. LEXIS 57718, at *21–22

(D.V.I. July 7, 2009) ("[D]iscovery in this matter has been minimal. The record shows that the parties have done little more than hold a conference pursuant to Federal Rule of Civil Procedure 26(f). They also have met with the magistrate judge on at least three occasions.... No discovery or motion practice cutoffs have been established. No trial date has been scheduled. There is no hint in the record that the parties have conducted depositions, propounded interrogatories, requested documents, or engaged in other factor discovery. These circumstances ... militate against a waiver finding."); *Tomcykoski v. Continuing Care Rx, Inc.*, No. 08–2014, 2009 WL 1816953, at *3, 2009 U.S. Dist. LEXIS 53961, at *8–9 (M.D.Pa. June 24, 2009) ("The court finds that defendant did not waive its right to compel arbitration by answering the complaint and engaging in preliminary discovery.... Though the parties have exchanged preliminary materials, they have not deposed anyone.... As such, the discovery process in this case had not advanced far before defendant raised the issue of arbitration, and plaintiff was not forced to engage in extensive and costly motion or deposition practice before being faced with the possibility of facing an arbitrator.").

have deposed one another's witnesses. *See Wood v. Prudential Ins. Co. of Am.,* 207 F.3d 674, 680 (3d Cir.2000); *Jayeff Constr. Corp. v. Laborers' Int'l Union of N. Am.,* No. 05–5465, 2009 WL 4609829, at *2, 2009 U.S. Dist. LEXIS 111230, at *9 (D.N.J. Nov. 30, 2009); *Yanes v. Minute Maid Co.,* No. 02–2712, 2006 WL 521541, at *4, 2006 U.S. Dist. LEXIS 8859, at *11 (D.N.J. Mar. 2, 2006). Depositions have not yet taken place in this case.

I have also not yet issued a Rule 16 scheduling order in this case, and the discovery that I did command was limited to the issue of jurisdiction. *Cf. Zimmer v. Cooper Neff Advisors, Inc.,* 04–3816, 2008 WL 4399012, at *4, 2008 U.S. Dist. LEXIS 74897, at *12–13 (E.D.Pa. Sept. 26, 2008) ("While the parties have engaged in some discovery and motions practice, a review of the case reveals that the discovery and motions practice was limited to the issue of preliminary relief.... None of this Court's pretrial Orders addressed the merits of the parties' claims. In fact, this Court has yet to issue a Rule 16 Order in this matter.").

Therefore, although there has been some discovery activity, it has not been of the sort that leads to the conclusion that Defendants have waived their right to seek arbitration.

### g. Conclusions

A consideration of the *Hoxworth* factors as a whole counsels against a finding of waiver in this case. Defendants' delay was not extreme and was well reasoned, Defendants have yet to contest the merits of the case, and Defendants notified Plaintiff of their intent to seek arbitration as early as their answer. Although there has been some non-merits motions practice, some consent to court orders, and some discovery activity, none has been extensive or lengthy. Thus, on balance, there has been no waiver.

Moreover, as a general matter, the *Hoxworth* factors are intended to be used by courts to identify when a party has or has not been *prejudiced* by a delay in seeking to compel arbitration.[16] Such prejudice can be procedural or substantive. *See generally Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 224 (3d Cir.2007). Procedural prejudice results when a party has expended significant resources in litigation before receiving notice of a request for arbitration. Substantive prejudice can result in several scenarios, such as when a party 1) has been exposed to significant discovery, which it would not have had to endure in arbitration, 2) has been forced to reveal its legal arguments in responding to motions for summary judgment and the like,[17] or 3) is compelled to relitigate a claim when a party, having lost in court, seeks a second chance before an arbitral panel.[18]

16. As stated above, prejudice is the "touchstone for determining whether a right to arbitration has been waived." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 925 (3d Cir.1992); *see also Windward Agency v. Cologne Life Reins. Co.,* No. 95–7830, 1997 WL 164269, at *3, 1997 U.S. Dist. LEXIS 4154, at *13 (E.D.Pa. Apr. 1, 1997) ("While federal law requires courts to consider several factors in determining whether there has been a waiver of the right to demand arbitration, including dilatory conduct by the party seeking arbitration and any other actions taken by the moving party which are inconsistent with seeking arbitration, the crucial inquiry is whether the conduct cited in support of the waiver has resulted in prejudice to the party asserting it. If prejudice is absent, waiver usually will not be found.").

17. *See St. Paul Mercury Ins. Co. v. Perry,* 227 F.Supp.2d 430, 436 (E.D.Pa.2002) ("Because the defendant did not assert its right to arbitrate until filing its motion for summary judgment, which included substantive arguments, the plaintiff policyholder was forced to reply and expose its legal theories of the case.").

18. *See In re Kaiser Group Int'l, Inc.,* 307 B.R. 449, 455 (D.Del.2004) ("Prejudice can be established in a substantive manner, 'such as when a party loses a motion on the merits

Ultimately, Plaintiff has not been significantly prejudiced in this case. Although she has had to engage in some litigation over the course of a period of months, the discussion of the time and other factors above indicates that any procedural prejudice suffered as a result falls short of the procedural prejudice that has been found problematic in the past. Furthermore, Quilloin has not had to expose herself in discovery, nor has she revealed her legal arguments in motions on the merits. Finally, this is not a case where Defendants have lost on a claim in court and are seeking a second chance in arbitration. Therefore, any prejudice remains minor, and I find that Defendants have not waived their right to compel arbitration in this matter.

### B. Validity and Scope

#### 1. A court has the obligation to determine the validity of the agreement to arbitrate.

In their reply, Defendants submit that, based on the Supreme Court's recent decision in *Rent–A–Center, West, Inc. v. Jackson*, — U.S. ——, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), at least some of Plaintiff's invalidity arguments are for the arbitrator. Reply 5. However, it is rather the case that I must address those arguments.

■■■ As the Third Circuit recently confirmed, "when a party challenges the validity of an arbitration agreement ..., a question of arbitrability is presented .... that is presumptively for the court, not the arbitrator, to decide." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 179–80 (3d Cir.2010). The Third Circuit explained that the Courts of Appeals are unanimous on this point. *Id.* at 180.[19]

To be clear, the Supreme Court has held that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," and that arbitrators are to decide issues relating to the contract as a whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Thus, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate— the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 403–04, 87 S.Ct. 1801.[20]

Most recently, in *Rent–A–Center, West, Inc. v. Jackson*, — U.S. ——, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), the Supreme Court did send an unconscionability challenge to arbitration for decision. However, in *Rent–A–Center*, there were two agreements to arbitrate, the first to arbi-

---

and then attempts, in effect, to relitigate the issue by invoking arbitration ....' " (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir.1991))).

19. *Puleo* was decided a little over a month before *Rent–A–Center*. However, *Rent–A–Center* does not undermine *Puleo*'s holding as applied to this case.

20. *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("Challenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.... [R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." (internal citations omitted)).

trate employment disputes, and the second to arbitrate disputes as to the unconscionability of the first (the "delegation provision"). Under the *Prima Paint* framework, the Supreme Court found that the agreement to arbitrate employment disputes constituted the contract as a whole, while the delegation provision constituted a separate agreement to arbitrate. Therefore, the Court concluded that it could only consider the validity of the delegation provision, and could not reach the validity of the broader agreement. Because Jackson had addressed his agreements to the unconscionability of the contract as a whole, the Court referred his claims to arbitration.

The contract at issue in this case does not resemble the contract at issue in *Rent–A–Center*. In *Rent–A–Center*, there were two clear agreements to arbitrate, one to arbitrate employment disputes, one to arbitrate challenges to the validity of the agreement. There is no such agreement to arbitrate challenges to the validity of the agreement in this case. Rather, there is a single agreement to arbitrate, and challenges to that agreement to arbitrate can be decided by judges as before under the *Prima Paint* line of cases.

As a related point, this is not a case where an arbitration clause is embedded in a lengthy contract governing other relations between the parties, in which case courts could only adjudicate challenges to the arbitration clause specifically, and not the broader contract. Instead, this is a case with a free-standing arbitration contract. Although the word "arbitration" does not appear in every sentence of the agreement, the agreement nevertheless constitutes a single arbitration provision. In other words, rather than separate contractual provisions, the various steps of the FTP are part and parcel of one agreement to arbitrate, prerequisites to final disposition of grievances via arbitration. Thus Plaintiff's challenges to the various provisions of the FTP constitute challenges to the agreement to arbitrate, which are for a court to decide. *See also Pokorny v. Quixtar, Inc.*, No. 07–00201, 2008 WL 850358, at *12–14, 2008 U.S. Dist. LEXIS 28439, at *39–43 (N.D.Cal. Mar. 31, 2008); *Dunham v. Envtl. Chem. Corp.*, No. 06–03389, 2006 WL 2374703, at *7–8, 2006 U.S. Dist. LEXIS 61068, at *21–23 (N.D.Cal. Aug. 16, 2006); *Allen v. Apollo Group, Inc.*, No. 04–3041, 2004 WL 3119918, 2004 U.S. Dist. LEXIS 26750 (S.D.Tex. Nov. 9, 2004); *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 16 Cal.Rptr.3d 296 (Cal.Ct.App.2004).

Finally, even if *Rent–A–Center* could be read to require Plaintiff to challenge only the arbitration language of the FTP, Plaintiff has done so. In *Rent–A–Center*, the Court noted that Jackson "challenged only the validity of the contract as a whole," that he did not "even mention the delegation provision," that "none of Jackson's substantive unconscionability challenges was specific to the delegation provision," that "he did not make any arguments specific to the delegation provision," and that "he did not contest the validity of the delegation provision in particular." *Rent–A–Center*, 130 S.Ct. at 2779–80. The Court hinted that "had Jackson challenged the delegation provision by arguing that ... common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court." *Id.* at 2780. Thus the Supreme Court continues to require simply that "the basis of challenge ... be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* at 2778. Unlike Jackson, Quilloin certainly mentions the arbitration clause, makes substantive unconscionability challenges specific to the arbitration clause, and makes several

other arguments attacking the arbitration clause. For instance, she argues that the components of the arbitration agreement requiring parties to pay their own attorneys' fees and to waive their right to class actions are unconscionable. Resp. 12–13, 15–16.

For all of these reasons, I may proceed to address Plaintiff's arguments that the agreement to arbitrate is invalid.

## 2. There may not be a valid agreement to arbitrate in this case.

■■■■■ "A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). The parties agree that Pennsylvania contract law is the relevant state law in this case. Mot. Dismiss 7, ECF No. 28; Resp. 11, ECF No. 33. To find a contract valid under Pennsylvania law, courts must inquire " '(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.' " *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir.1998). Plaintiff does not dispute that the parties manifested an intent to be bound, that the terms of the agreement were sufficiently definite, or that there was consideration, and therefore I will not rule to the contrary.

However, the Federal Arbitration Act notes that arbitration agreements are valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). Courts have read this clause to encompass "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Plaintiff argues that any contract existing between her and Defendants should be deemed invalid on the grounds of unconscionability and duress.

### a. Unconscionability

■■■■■ Plaintiff first asserts that there is no valid agreement to arbitrate on the basis of unconscionability.[21] For a contract to be unconscionable under Pennsylvania law, it must be both procedurally and substantively unconscionable. *See Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007) ("[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively." (internal citations omitted)).

Plaintiff's specific claims are that any alleged agreement to arbitrate is 1) substantively unconscionable because a) it requires Plaintiff to pay her own attorneys' fees and costs; b) it forces Plaintiff to waive her right to the class action device; and c) it imposes no time constraints on the steps preliminary to arbitration under the FTP; and 2) procedurally unconscionable as a contract of adhesion. Resp. 11–12.

### i. Substantive Unconscionability

■■■ As stated above, substantive unconscionability arises when a contractual

---

**21.** As explained above, unconscionability therefore becomes an issue for the Court to address. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Rent–A–Center, West, Inc. v. Jackson*, ─ U.S. ─, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172 (3d Cir.2010).

provision unreasonably favors the party asserting it. *See Salley*, 925 A.2d at 119. In other words, as a general matter, "[i]n determining whether a clause is unconscionable, the court should consider whether, in light of the general commercial background and the commercial needs of a particular trade, the clause is so one-sided that it is unconscionable under the circumstances." *Jim Dan, Inc. v. O.M. Scott & Sons, Co.*, 785 F.Supp. 1196, 1200 (W.D.Pa. 1992).

## Attorneys' Fees and Costs

Plaintiff argues that the arbitration is substantively unconscionable because it states that an employee "will be responsible for the fees and costs of your own respective legal counsel, if any, and any other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts" when the FLSA clearly allows for "a reasonable attorney's fee to be paid by the defendant, and costs of the action." Resp. 12; *see also* 29 U.S.C. § 216(b) (2006). Thus, according to Plaintiff, the provision of the FTP requiring employees to bear their own fees and costs "is an impermissible waiver of a statutory right that Congress specifically granted to aggrieved employees, therefore making the FTP unconscionable." *Id.* Defendants counter that the agreement clearly allows for the award of attorney's fees and costs as a remedy, and is therefore not substantively unconscionable.

Plaintiff is correct that a waiver of the right to recover attorney's fees and costs can be substantively unconscionable. The Third Circuit recently wrote in *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3d Cir.2010) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 267 (3d Cir.2003)), that "[p]rovisions in arbitration clauses requiring parties to bear their own attorney's fees, costs, and expenses work to 'the disadvantage of an employee needing to obtain legal assistance' " and held that the

agreement in question's "restriction on the arbitrator's ability to award attorney's fees, costs, and expenses [was] substantively unconscionable." *See also Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir.2003) ("The district court properly determined that the proviso requiring each party to pay its own attorney's fees—regardless of the outcome of the arbitration—runs counter to statutory provisions under Title VII and ADEA that permit an award of attorney's fees and costs to a prevailing party."); *Alexander*, 341 F.3d at 267–68 ("The arbitration agreement also substantially limits the relief available to plaintiffs. Reinstatement and narrowly defined 'net pecuniary damages' constitute the only available forms of relief for a successful employee. The parties also bear their own costs and expenses, including attorney's fees. . . . These restrictions are one-sided in the extreme . . . . Under such circumstances, these restrictions are substantively unconscionable."); *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 278 (3d Cir.2004) (following *Alexander*).

In this case, however, it is unclear whether the contract deprives employees of the right to recover attorney's fees and costs. For this reason, I can reach no conclusion on this unconscionability issue at this time.

Regarding contract interpretation and summary judgment, the Fourth Circuit has explained:

A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible of two reasonable interpretations. The first step for a court asked to grant summary judgment based on a con-

tract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact. *World–Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir.1992) (internal quotations and citations omitted).

 I find the contract before me ambiguous on the attorney's fees and costs point. Various principles of contract interpretation point in different directions in this instance, leading to the conclusion that this contract is susceptible of two reasonable interpretations. For instance, it is accepted that, in interpreting contracts, effect must be given to every part of a contract, *see Newman v. Mass. Bonding & Ins. Co.*, 361 Pa. 587, 65 A.2d 417, 419 (1949), and "[a]n interpretation will not be given to one part of the contract which will annul another part of it," *Capek v. Devito*, 564 Pa. 267, 767 A.2d 1047, 1050 (2001) (quoting *Cerceo v. De Marco*, 391 Pa. 157, 137 A.2d 296, 298 (1958)). Furthermore, a contract must be interpreted so as to make it lawful. *See Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 113 (3d Cir.2009) (citing Restatement (Second)

of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.")). To conclude that arbitrators of Plaintiff's claim could not award her attorney's fees or costs would not give effect to, and would rather partially annul, the arbitrator's authority provision of the contract. Furthermore, that interpretation could render the contract unlawful. However, another principle of contract interpretation states that specific provisions should trump general provisions. *See, e.g., Musko v. Musko*, 548 Pa. 378, 697 A.2d 255, 257 (1997) (Castille, J., dissenting) (citing *In re Alloy Mfg.*, 411 Pa. 492, 192 A.2d 394 (1963)). Thus it could be argued that the provision specifically requiring each party to bear his own legal fees and costs must trump the provision allowing arbitrators to award all remedies available at law (including attorney's fees and costs). Given that the principles of contract interpretation tug in different directions in this instance, I conclude that the contract is ambiguous on its face. *See* 17A Am.Jur.2d Contracts § 331 (2010) ("Ambiguity in a written contract does not appear until the application of the pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.").

There is no extrinsic evidence in the record that clarifies the ambiguity as a matter of attorney's fees and costs by employees. For the time being, genuine issues of material fact remain as to the proper interpretation of the contract, and those will likely need to be resolved by a jury. Upon resolution, I can revisit this substantive unconscionability challenge.

### Class Action Waiver

Defendants state in their motion to compel arbitration that Plaintiff must proceed on an individual basis and cannot assert

her FTP claims in a class manner. Plaintiff assumes for the sake of argument that the agreement requires individual, not class, arbitration, and then contends that the FTP represents a substantively unconscionable waiver of the right to class proceedings.[22] The agreement itself does not discuss the individual or class nature of the proceedings. Here, I consider only the issue presented to me, namely whether the agreement is substantively unconscionable if class arbitration is not in fact allowed.

■ A distillation of Third Circuit and Pennsylvania case law reveals that "(1) class action waivers in arbitration provisions are not *per se* unconscionable under Pennsylvania law, and (2) such waivers are unconscionable only when they prohibit individual consumers from obtaining relief due to prohibitive cost, and thereby insulate a defendant from liability." *Clerk v. First Bank of Del.*, 735 F.Supp.2d 170, 187 (E.D.Pa.2010) (citing *Kaneff v. Del. Title*

*Loans, Inc.*, 587 F.3d 616 (3d Cir.2009); *Cronin v. CitiFinancial Servs., Inc.*, 352 Fed.Appx. 630 (3d Cir.2009); *Homa v. Am. Express Co.*, 558 F.3d 225 (3d Cir. 2009); *Gay v. CreditInform*, 511 F.3d 369 (3d Cir.2007); *Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa.Super.Ct.2006); *Lytle v. CitiFinancial Servs., Inc.*, 810 A.2d 643 (Pa.Super.Ct.2002)). Although many of the cases so holding arise in the consumer context, courts reviewing employment agreements with class actions waivers have similarly "held that limiting the use of the class-action vehicle, if it raises costs to the point of effectively preventing individual redress, is substantively unconscionable" and noted that "[t]he determinative fact in finding a class action waiver unconscionable is whether the prospects of a favorable verdict create an incentive for a plaintiff to file the action individually." *Hopkins v. New Day Fin.*, 643 F.Supp.2d 704, 718 (E.D.Pa.2009) (internal quotations and citations omitted).[23]

---

22. Plaintiff argues later in her brief that if the arbitration agreement is found to be valid and enforceable, she "should be able to proceed to arbitration on a collective action basis." Resp. 25. She then submits in a footnote that "the issue of whether Plaintiff should proceed to arbitration on a collective action or individual basis is not properly before this court" and that "an arbitrator, not this Court, should decide the issue of whether the FTP forbids class arbitration." Resp. 25 n. 11. In their reply, Defendants disagree that arbitration should proceed on a collective basis, but agree that the issue "is for the arbitrator, not this Court." Reply 12 n. 5. Both parties cite *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), for the proposition that arbitrators, not courts, should ascertain whether an arbitration agreement permits or forbids class arbitration. Thus the parties concur that an arbitrator should determine whether or not the instant contract provides for class action arbitration and have legal authority for their argument. I will accept their positions and make no finding as to whether the agreement requires individual arbitration or permits class arbitration.

23. In the employment context, there is much less case law on the enforceability of class action waivers in arbitration agreements. *See* Thomas W.H. Barlow, *The Enforceability of Class Action Waivers in Arbitration Clauses*, 2009 J. Disp. Resol. 31, 32 (2009) ("Only a few courts have ruled on the enforceability of class arbitration waivers in employment contracts."). However, the courts to have ruled on the issue have not categorically refused to apply state unconscionability law to assess the enforceability of the waiver. *See Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 60 (1st Cir.2007) (finding a class action waiver in an arbitration agreement between employee and employer unconscionable due to "combination of a series of events"); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 (9th Cir.2003) (finding the class action waiver in Circuit City's arbitration agreement with its employees to be "shockingly one-sided" and "substantively unconscionable"); *see also Gentry v. Superior Court*, 42 Cal.4th 443, 64 Cal.Rptr.3d 773, 165 P.3d 556, 568 (2007) (identifying four factors in particular to be considered when assessing whether a class action waiver by an employee in an arbitration agreement is unenforceable: "[1] the

There is not currently enough evidence in the record to determine whether Plaintiff would be precluded from bringing her claim as an individual due to prohibitive cost, and whether Defendants would thereby be insulated from liability.

■ When an arbitration agreement with a class action waiver provides for corporations to cover the costs of arbitration, it is less likely that the class action waiver is unconscionable. *See Cronin v. CitiFinancial Servs., Inc.*, 352 Fed.Appx. 630, 636 (3d Cir.2009) ("We conclude that [Plaintiff's] ability to seek actual and punitive damages, costs, and attorneys' fees rendered his individual ... claim sufficiently valuable so that [Defendant] was not completely insulated from liability, even in light of [Plaintiff's] contractual waiver of the right to pursue a class action. As a result, the class action waiver is not unconscionable under the public policy of Pennsylvania ....").

In this case, Defendants have contracted to pay much of the cost of arbitration. According to the FTP, although "[t]he company and [the employee] will share the cost of the AAA's filing fee and the arbitrator's fees and costs, ... [the employee's] share of such costs shall not exceed an amount equal to one day's pay (for exempt employees), or eight times [an employee's] hourly rate (for non-exempt employees), or [the] local court civil filing fee, which ever is less." Mot. Dismiss Ex. B at 6, ECF No. 28. Plaintiff has not furnished evidence of her daily pay or hourly rate, but the local civil court filing fee is $350, which therefore represents the most that Plaintiff would have to cover.

On the other hand, as stated above, the contract is ambiguous as to whether Plaintiff can recover attorney's fees and other costs. Moreover, Plaintiff has not quantified the damages she seeks, and alleges in her complaint that she needs discovery from Defendants in order to do so. Thus I cannot make a determination as to whether Plaintiff would be sufficiently incentivized to litigate as an individual, and cannot conclude whether or not any class action waiver would be substantively unconscionable under Pennsylvania law. Therefore, before definitively ruling on this issue, the attorney's fees question must be answered, and I order discovery as to the amount of damages claimed by Plaintiff individually. Then I can determine as a matter of law whether a class action waiver in this context would be substantively unconscionable.[24] I thus anticipate subsequent mo-

---

modest size of the potential individual recovery, [2] the potential for retaliation against members of the class, [3] the fact that absent members of the class may be ill informed about their rights, and [4] other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration"). Rather, whether upholding or striking down the clauses in question, courts have generally invoked basic unconscionability principles to guide their scrutiny. I will do the same. In Pennsylvania, a contractual clause is substantively unconscionable when it is one-sided and unreasonably favors the party asserting it. *See Jim Dan, Inc. v. O.M. Scott & Sons, Co.*, 785 F.Supp. 1196, 1200 (W.D.Pa.1992); *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007). In the context of class action waivers, one-sidedness and unreasonable favor have been found when individuals are disincentivized from bringing their claims due to prohibitive cost, and when defendants are thereby insulated from liability. I have allowed these same considerations to guide me in the analysis that follows, in my assessment of the unconscionability of individual arbitration under the facts of this case.

**24.** As justification for this approach, I repeat that unconscionability is a question of law for judges, not juries, to decide. *See Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 120 (2007) ("[T]he ultimate determination of unconscionability is for the courts."); *see also* Restatement (Second) of Contracts § 208 cmt. f (1981) ("A determination that a contract or term is unconscionable is made by the court ...."). Furthermore, I have discretion to deny the motion to compel

tions on the issue, and will grant a hearing if requested by the parties and found necessary by the Court.

**Running Out the Clock**

Plaintiff also contends that the Fair Treatment Process unreasonably favors Defendants, and is therefore unconscionable, because it allows Defendants to refuse to act on Plaintiff's claims until the statute of limitations for arbitration or litigation has expired. Resp. 13.

The FTP lists four steps prior to arbitration. Step 1 can be triggered "[i]f an informal discussion with your Supervisor did not resolve your problem, concern or dispute." Mot. Dismiss Ex. B at 2, ECF No. 28. An employee can advance to "Step 2: Department Head" "[i]f [he or she] is not satisfied with the supervisor's response to the problem or dispute in *Step 1*." *Id.* at 3. An employee can advance to "Step 3: Administration" "[i]f the response from [the] Department Head in *Step 2* does not resolve [his or her] problem or dispute." *Id.* An employee can progress to "Step 4: FTP Committee" "[i]f the response of Facility Administration in *Step 3* does not resolve [his or her] problem or dispute." *Id.* Finally, "[i]f [the employee]

does not accept the decision reached in *Step 4*, then [he or she] has the right to submit the problem or dispute to final and binding arbitration." *Id.* at 4. At each of the first three steps, the contract notes that the employee can expect a response "as soon as possible, usually within seven calendar days." *See, e.g., id.* at 3. At step 4, the FTP Committee is to meet "as soon as possible, usually within 30 days." *Id.* at 4. The Committee is to vote on the issues presented immediately after meeting, but may hear additional testimony or consider additional documents if it decides during its deliberation that it needs additional information. Finally, the FTP states that "[a]ny request for arbitration … must be made within one year after the event giving rise to the dispute…. However, if a longer limitations period is provided by a statute governing your claim, then your claim will be subject to the longer limitations period provided by the statute." *Id.* at 8. Thus, on the one hand, it appears that most steps of the FTP will take only 7 days, that the Committee process will take about a month, and that by requiring employees to file their claims in arbitration within a year (or any longer statutory

without prejudice at this stage, and to permit further discovery, a hearing, and reconsideration of limited issues. *See Stone v. Pa. Merchant Group, Ltd.,* 915 F.Supp. 727 (E.D.Pa. 1996) (Brody, J.) (denying without prejudice a motion for summary judgment so as to permit development of the record on the issue of whether there was a valid agreement binding the plaintiff to arbitrate his claims against defendant); *see also Wobb v. Ford Motor Co.,* 76 F.R.D. 452, 458 (W.D.Pa.1977) (holding that Plaintiff's unconscionability claims would "best be decided after full development of the facts" and " deny[ing] the requested relief without prejudice."). For additional support, I turn to the Uniform Commercial Code: "If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to

aid the court in making the determination." U.C.C. § 2–302(2) (2004); *accord* 13 Pa. Cons.Stat. § 2302 (1999). Although the UCC governs the sale of goods, not employment contracts, it can provide guidance in the adjudication of other contractual disputes. *See* Restatement (Second) of Contracts § 208 cmt. a (1981) ("Uniform Commercial Code § 2–302 is literally inapplicable to contracts not involving the sale of goods, but it has proven very influential in non-sales cases. It has many times been used either by analogy or because it was felt to embody a generally accepted social attitude of fairness going beyond its statutory application to sales of goods."). Thus I find it proper to deny Defendants' motion to compel without prejudice as to the substantive unconscionability of the class action waiver, order discovery on that issue, and will permit the filing of subsequent motions and hearing requests.

limitations period governing the claim), the company is implicitly committing itself to progressing through the four preliminary steps before the relevant statute of limitations runs. On the other hand, there is no binding language to this effect, as the agreement repeatedly states only "as soon as possible" and "usually."

As stated above, substantive unconscionability arises when a contractual provision unreasonably favors the party asserting it. *See Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 925 A.2d 115, 119 (2007). Courts are to ask "whether, in light of the general commercial background and the commercial needs of a particular trade, the clause is so one-sided that it is unconscionable under the circumstances." *Jim Dan, Inc. v. O.M. Scott & Sons, Co.*, 785 F.Supp. 1196, 1200 (W.D.Pa.1992).

The multi-step aspect of the parties' agreement is potentially unconscionable, but I am unable to reach any conclusions at this time. It is potentially so because there are seemingly no clear or firm limitations on the amount of time that the Tenet corporate hierarchy can take at each of Steps 1 through 4 before responding to an employee's grievance and allowing him or her to move up the FTP ladder. It is also potentially unconscionable because re-quiring an employee to proceed through four internal layers before seeking arbitration arguably unreasonably favors Tenet, possibly stymieing an employee's path to the ultimate resolution of his or her dispute. However, I cannot definitively rule at this time. First, in determining one-sidedness in certain circumstances, precedents can be illuminating, but the parties have hardly cited any, and I have found few to none relevant to this case.[25] Moreover, there are genuine issues of material fact pertaining to the meaning of the contract on this issue. The introduction of additional evidence as to Tenet's intention (in creating this multi-step process with unclear time limitations) and practice (of, timely or untimely, addressing employees' grievances) would be helpful to the resolution of this claim. Therefore, I order additional discovery as to the meaning and application of the contract on this point. Any disputed facts must be presented to a jury for resolution. Then I can determine as a matter of law at a later stage whether the FTP is unconscionable for allowing Defendants to run out the clock on Plaintiff's claims. As with the class action waiver issue, I anticipate subsequent motions on the issue, and will grant a hearing if requested by the parties and found necessary by the Court.[26]

**25.** Defendants cite no cases on the issue. Plaintiff cites *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir.2010), as holding substantively unconscionable "an arbitration agreement's requirement that an employee file a grievance within five days of the complained-of incident." Resp. 14. Plaintiff then argues that "[t]he time limit provisions in the FTP are directly analogous to the time limits at issue in *Nino*, just in a directly opposite fashion." *Id.* Such precedent is of limited usefulness in this particular substantive unconscionability inquiry. More on point seems *Allen v. Apollo Group, Inc.*, No. 04–3041, 2004 WL 3119918, 2004 U.S. Dist. LEXIS 26750 (S.D.Tex. Nov. 9, 2004), for example, and perhaps also *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 16 Cal.Rptr.3d 296 (Cal.Ct.App.2004). Neither case presents facts identical to this case. Furthermore, neither case is binding on me. However, future litigation by the parties identifying and presenting arguments from cases such as these would aid resolution of this matter.

**26.** *See supra* note 24. I will defer consideration of the severability issue until resolution of the unconscionability issues. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 186 (3d Cir.2010) ("[W]hen confronted by a litigant's claim that a provision of an arbitration agreement is unconscionable, we have always considered, first, whether the provision is in fact unenforceable, and, if so (and only if so), whether the unenforceable provision may be severed from the remainder of the arbitration agreement.").

### ii. Procedural Unconscionability

As to the other prong of the unconscionability inquiry, Plaintiff asserts that the FTP is a procedurally unconscionable contract of adhesion.

■■■■ Procedural unconscionability looks to the circumstances and process surrounding parties' signing of a contract. As noted above, under Pennsylvania law, a contract is procedurally unconscionable when one party had no meaningful choice as to the acceptance of the contract's terms. *See, e.g., Salley,* 925 A.2d at 119. Procedural unconscionability often arises in the contract of adhesion context. A contract of adhesion is "one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Parilla v. IAP Worldwide Servs. VI, Inc.,* 368 F.3d 269, 276 (3d Cir.2004) (quoting *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 265 (3d Cir.2003)).

Third Circuit case law provides some indication of the boundaries of procedural unconscionability and contracts of adhesion. For instance, in *Alexander,* the court found unconscionable "an employment agreement that compelled minimally-educated crane operators in the Virgin Islands to arbitrate their claims and pay for that arbitration." *Zimmer v. CooperNeff Advisors, Inc.,* 523 F.3d 224, 228–29 (3d Cir.2008) (citing *Alexander,* 341 F.3d at 258–60, 266–68). The *Alexander* court noted that "[t]he arbitration agreement ... was prepared by the party with excessive bargaining power and presented to plaintiffs for signature on a take-it-or-leave-it basis," and that an employer "which conducts business throughout the nation and the world, clearly possessed more bargaining power than two long-time equipment operators with limited educational backgrounds and, at best, very narrow options for other employment." *Alexander,* 341 F.3d at 266.

Then in *Zimmer v. CooperNeff Advisors, Inc.,* 523 F.3d 224, the Third Circuit, applying Pennsylvania law, refused to find procedural unconscionability in the case of a Harvard-educated economist who signed an employment agreement with an arbitration clause as a condition of employment. The court explained that "Zimmer had been the manager of a two billion dollar fund at Vanguard, had multiple offers of employment at the time he accepted CooperNeff's job offer, quickly secured a new position when he decided to leave CooperNeff, and, according to counsel at oral argument, is currently working in the industry." *Id.* The court also faulted Zimmer for not requesting a copy of the employment agreement or seeking to negotiate its terms prior to accepting the position or starting at CooperNeff. *Id.* Thus, in all, the court found these circumstances to be "highly distinguishable from the crane operators in *Alexander,*" as "Zimmer was a highly-educated party with various employment opportunities who accepted an employment offer without first examining the terms of that employment and who now seeks to nullify the contract that he ultimately signed." *Id.*

Most recently, in *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191 (3d Cir.2010), the Third Circuit found an employment agreement between a Jordanian gemologist and one of the world's largest jewelry retailers to be procedurally unconscionable. The court wrote that "Nino had no opportunity to negotiate with [his employer] over the contract's terms, that [the employer] was the stronger contractual party, and that the arbitration agreement [was] thus procedurally unconscionable." *Id.* at 201. Comparing Nino's case to *Alexander* and *Zimmer,* the court found that "Nino, as a college graduate, was better educated than were the plaintiffs in *Alexander,*" but emphasized "that Nino's bargaining leverage

was [not] even remotely comparable to that of the plaintiff in *Zimmer.*" *Id.* at 202. Rather, "Nino was dependent upon [his employer] with respect to his immigration status at the time he accepted the job offer." *Id.* (internal citations omitted).

Taken together, Third Circuit precedent on procedural unconscionability suggests a fact-sensitive approach that focuses on education, bargaining power, and other employment opportunities.

In this case, the issue of procedural unconscionability cannot be determined without further factual inquiry.

Plaintiff's situation does not immediately reek of procedural unconscionability. Plaintiff has an associate degree in nursing, and thus her educational background falls somewhere within the spectrum established by the case law explored above. Defendants are large corporations, *see* First Am. Compl. ¶¶ 13–15, ECF No. 19, but may have less bargaining power than the multinationals present in *Alexander* and *Nino.* There is no evidence in the record as to Plaintiff having other job offers, and Plaintiff has submitted that she was in need of employment to financially support herself at the time she signed the arbitration agreement in 2009; that said, her situation may not have been as dire as Nino's, where the employee's right to remain in the country was contingent upon continued employment with his employer.

There are nevertheless indications in the record that Plaintiff's signing of the agreement may have been procedural unconscionable. With regard to the 2009 agreement to arbitrate, Plaintiff has averred,

> I was told I had to sign the Acknowledgment. I literally was not given any choice whatsoever about whether to sign this Acknowledgment, nor was I given any opportunity to discuss or negotiate any terms set forth in the Acknowledgment.

> The Acknowledgement was presented to me while I was at work, and I was given no time to review it in any real detail. The first time I saw it was when I was told I had to sign it. I was not given an opportunity to review it or to consult with an attorney about it.

Quilloin Decl. ¶¶ 15, 16. Plaintiff has also averred that she was not initially told that her employment would be conditional on agreeing to arbitrate any potential claims against Defendants, *id.* ¶ 12, that she was asked to sign this agreement after having begun work for Defendants, *id.* ¶ 14, and that the terms of the agreement were not explained to her, *id.* ¶ 17. Thus Plaintiff was not aware that there would be an employment agreement with an arbitration clause prior to accepting her position with Defendants, as Zimmer had been. Rather, she had committed herself to Defendants, and had been working for several weeks, when presented with the contract, leaving her with little choice by to accept its terms and sign. *See also Lucey v. FedEx Ground Package Sys., Inc.,* 305 Fed.Appx. 875, 877 (3d Cir.2009) (finding financial commitment to a position a factor in the procedural unconscionability analysis). With regard to the 2006 agreement to arbitrate, Plaintiff initially claimed never to have executed one. Quilloin Decl. ¶ 9. She has since admitted to signing a similar agreement at an earlier date, but submits that her "lack of recall ... demonstrates the dearth of time and independence [she] had to review and study" the contract. Supplemental Submission 1–2, ECF No. 46.

In light of these competing considerations, I will also defer ruling on the procedural unconscionability. In subsequent discovery, motions, and hearings, parties may repursue their procedural unconscionability arguments, for resolution when I am able to resolve the substantive unconscionability questions.

### b. Duress

■ As a final argument for invalidity, Plaintiff claims that any agreement to arbitrate was entered into under duress.

■ As a general matter, under Pennsylvania law, duress is "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Adams v. Adams*, 848 A.2d 991, 993 (Pa.Super.Ct.2004) (internal quotations omitted). In the economic context, the important elements of the doctrine are that "(1) there exists such pressure of circumstances which compels the injured party to involuntarily or against his will execute an agreement which results in economic loss, and (2) the injured party does not have an immediate legal remedy." *Litten v. Jonathan Logan, Inc.*, 220 Pa.Super. 274, 286 A.2d 913, 917 (Pa.Super.Ct.1971). In addition to these elements, Pennsylvania courts have held that "economic duress is present only if the defendant 'bring[s] about the state of financial distress in which plaintiffs [find] themselves at the time of signing.'" *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 911 (3d Cir.1985) (quoting *Litten*, 286 A.2d at 917).[27]

In this case, Plaintiff argues that "[n]othing less than her brand new job was on the line." Resp. 17. However, there is no indication that Defendants were the source of any financial distress Plaintiff may have been experiencing at the time

she signed the contract. Therefore, the circumstances of this case do not meet the test for duress under Pennsylvania law.

### C. The FLSA dispute falls within the scope of the agreement to arbitrate.

■ Plaintiff first contends that her FLSA claims do not fall within the scope of the arbitration agreement, as they are "non-waivable" and the FTP expressly excludes "nonwaivable statutory claims." Resp. 9.

Plaintiff's reading of the contract is erroneous. The FTP states that it "covers all disputes relating to or arising out of an employee's employment with the company or the termination of employment" and includes "claims for ... breach of contract, ... or any other legal claims and causes [of] action recognized by local, state, or federal law or regulations." Mot. Dismiss Ex. B at 1, ECF No. 28. In the "Exclusions and Restrictions" section, the FTP does qualify that "any non-waivable statutory claims, which may include waghe [sic] claims ... are not subject to exclusive review under the FTP." *Id.* at 7. However, the FTP continues and explains that "you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, regardless of whether you decide to use the FTP to resolve them." *Id.* But "if such an agency completes its processing of your action against the company, you must use the FTP if you wish to pursue your

**27.** *See generally Harsco*, 779 F.2d at 911–12 ("The court concluded that Zlotnicki was not the victim of economic duress because the situation that caused him to fear the loss of his job—the need to support his wife and child—was of his own making.... The district court committed no error in holding that the facts pleaded by Zlotnicki did not constitute economic duress under Pennsylvania law."); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 893 (3d Cir.1975) ("At most, the facts indicate that economic conditions of the marketplace induced Three Rivers to sign the release, but there is no allegation that Ford applied any illegal pressure. Duress is not established merely by showing that the release was given under pressure of the financial circumstances disclosed here."); *Reed v. SmithKline Beckman Corp.*, 569 F.Supp. 672, 675 (E.D.Pa.1983) (finding that "economic and career-related pressures" did not give rise to a claim of duress).

claim." *Id.* Thus, an employee *can* pursue non-waivable statutory claims via the FTP; the qualification is only that alternative agency avenues for resolution of the claims also remain open to him or her as a preliminary matter.[28]

Plaintiff also submits in a footnote that not only are non-waivable claims excluded from arbitration by the agreement, but that the nature of the FLSA precludes the arbitration of claims under it, citing *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). Resp. 9 n. 6.

The case law does not support Plaintiff's statement. *Barrentine* did indeed hold that previously arbitrated FLSA claims could still be pursued judicially, and comment more broadly that FLSA claims were best protected in a judicial, rather than arbitral, forum. However, more recent decisions from many circuit courts, relying on more recent Supreme Court case law, have enforced agreements to arbitrate FLSA claims. Since *Barrentine*, the Supreme Court has written that federal statutory claims can be arbitrated unless the party resisting arbitration can show that Congress intended to preclude the nonjudicial resolution of such claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Many circuit courts to have addressed the issue have found that there is no such indication of congressional resistance to arbitration in the FLSA context. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297–98 (5th Cir.2004); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313–14 (6th Cir.2000); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319–20 (9th Cir.1996); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir.

2002); *see also Tripp v. Renaissance Advantage Charter School*, No. 02–9366, 2003 WL 22519433, at *12 (E.D.Pa. Oct. 8, 2003); *Giordano v. Pep Boys–Manny, Moe & Jack, Inc.*, No. 99–1281, 2001 WL 484360, at *1 (E.D.Pa. Mar. 29, 2001). Many of these courts have also distinguished *Barrentine* on the grounds that *Barrentine* arose in the context of a collective-bargaining agreement, and was decided during a time of greater hostility towards arbitration. *See, e.g., Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir.2004). In light of the persuasive precedent of other courts, the fact that Plaintiff's dispute with Defendants does not arise in the context of a collective-bargaining agreement, and the fact that courts are more favorable to arbitration today, I too will find that the FLSA claims in this case are arbitrable.

Plaintiff asserted one final argument with respect to the scope of the arbitration agreement, that the majority of her claims, those arising between 2006 and 2008, were not covered by any agreement to arbitrate, as she had signed no agreement to arbitrate for that period of employment. *See* Quilloin Decl. ¶ 9 ("During my employment with Defendants from October, 2006 through February, 2008, I was never requested to execute, and, indeed, did not execute, any agreement to arbitrate any claims I might have against Defendants."). Defendants subsequently produced an "Employee Acknowledge Form," stating "I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet" and signed by Janice Quilloin on October

---

**28.** This interpretation finds further support when the non-waivable claims discussion is compared with the workers' compensation and ERISA claims discussion. In the work-

ers' compensation and ERISA context, the FTP states simply that those claims are "excluded from the FTP." *Id.*

9, 2006. Reply Ex. A. Upon request of the Court, Plaintiff filed a supplemental submission "acknowledging signing that document," with the result that this final scope argument is now moot. *See* Supplemental Submission, Dec. 1, 2010, ECF No. 46.

### IV. Conclusion

For the foregoing reasons, I will deny Defendant's motion without prejudice. Additional discovery on the issues of procedural and substantive unconscionability is required. Certain disputed issues of material fact must be presented to a jury for resolution. Ultimately, I will entertain additional motions on unconscionability as a matter of law.

#### *ORDER*

**AND NOW,** this 20th day of January, 2011, upon consideration of Defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Compliance with an Agreement to Arbitrate (Doc. # 28), Plaintiff's Response (Doc. # 33), and Defendants' Reply (Doc. # 39), it is **ORDERED** that Defendants' Motion to Dismiss (Doc. # 28) is **DENIED** without prejudice. It is **FURTHER ORDERED** that:

- The parties shall have 60 days to conduct discovery on the following issues:
 - Whether the agreement to arbitrate (the FTP) permits the award of attorney's fees and costs as a remedy;
 - The amount of individual damages Plaintiff seeks;
 - Whether the agreement to arbitrate (the FTP) allows Defendants to "run out the clock" on Plaintiff's claims; and
 - The circumstances surrounding Plaintiff's signing of the agreement to arbitrate (the FTP).
- A scheduling conference will be held on February 22, 2011 at 10:00 am to discuss:

- The resolution of outstanding questions of fact by jury trial; and
- The resolution of outstanding questions of law by additional motions and hearings.